EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | Amendment  460-2008-01123 |

| **Texas Workforce Commission Civil Rights Division** | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| **Mr. Manuel Zamora** | **(281) 537-9525** | **12-09-1957** |

| Street Address | City, State and ZIP Code |
|---|---|
| **3207 Rustling Moss Dr.,** | **Houston, TX 77068** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **HOUSTON POLICE DEPARTMENT** | **500 or More** | **(713) 308-8000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1200 Travis,** | **Houston, TX 77002** |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN
☒ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 07-01-2007 | 07-01-2007 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (if additional paper is needed, attach extra sheet(s)):

See attached.

JOEL LARA
MY COMMISSION EXPIRES
July 23, 2008

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

Dec 20, 2007
Date          Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)
12-20-07

PLAINTIFF'S
EXHIBIT
2

ZAMORA-2007-4510
COH12760

State of Texas
County of Harris

My name is Manuel F. Zamora, I am 50 years of age. I reside at 3207 Rustling Moss Drive, Houston, Texas 77068. My telephone number is 281.537.9525. My Texas Drivers License number is 08579400. I hereby declare the following.

I am a Hispanic police lieutenant who has been the target of racial and age discrimination and retaliation as recently as December 13, 2007. The basis for this complaint and the details are provided in the following enumerated paragraphs.

**I am alleging:**

1. **Disparate impact**

   a. **The captain's promotional examination has a disparate impact on Hispanics and reflects a lack of promotional opportunities for Hispanics.**

   Of 42 captain positions, only one is Hispanic. Historically, zero or less than one Hispanic has been promoted to captain from any one eligibility list. Many current captain incumbents failed the assessment center portion of the test in 2004, yet they were promoted as recent as 2006. Four who were promoted did not have a college degree at the time they were promoted. Seven who were promoted did not pass the assessment center portion of the test.

   Additionally, Hispanics are disparately impacted due to a policy that the assessment center method is not subject to appeal, thus violating due process for Hispanic challenges. The *Edwards Consent Decree* was to have addressed discrimination at the sergeant and lieutenant rank. The lieutenant rank is a prerequisite to captain. Without Hispanic advancement at these ranks, Hispanics suffer disparate impact at the captain level. I have passed four captain's tests and have not been promoted. I have or will suffer irreparable damage as I am close to retirement. I have clearly demonstrated the ability to handle captain and assistant chief responsibilities.

   b. **Hispanics are underrepresented and disparately impacted by selections to the position of assistant chief.**

   Hispanics disparately impacted at the lieutenant and captain rank are also disparately impacted at the assistant chief rank, as Hispanic assistant chiefs only comprise about 22% of the Command Staff. This causes irreparable harm to Hispanics who have achieved high educational status and who have outstanding department performance.

   I have previously scored as the highest Hispanic and scored higher than others who have achieved promotion to captain and assistant chief. I have been considered for assistant chief at least twice; each time I was not selected in favor of a lesser qualified candidate. I am the most educated Hispanic on the Houston Police Department.

2. **Retaliation and hostile work environment against me due to status as Hispanic**

   a. On December 13, 2007, I was retaliated against through a complaint alleging I used a study website over the internet while on duty to complete coursework. On December

1

ZAMORA-2007-4510
COH12772

18, 2007, Internal Affairs investigator Sergeant. R. Chavez, informed me, "We were wondering why you were on the University of Houston and Scholar website." The focus of the complaint is on officers who are studying on duty to complete on-line degrees offered by Mountain State University and Midwestern University, not the University of Houston. I am the manager over the Planning & Research Unit and I am required to conduct research for the department as a predominant part of my job.

I completed my doctorate degree on my own time over a year ago and have no need to conduct personal study for additional personal education. I am the manager over the Planning & Research Unit and my job is to conduct research and publish reports, most often for the Houston Police Department and the Chief of Police.

b.  I was retaliated against in November 2007, by an Internal Affairs Division complaint alleging that I missed a training class. Others who miss classes are treated less harshly, through a non-disciplinary action known as a Supervisory Intervention. The department routinely handles such complaints as Supervisory Interventions and counseling, not formal complaints that result in derogatory entries into the department's complaint history ("3 by 5"). I have been subjected to different treatment because of my Hispanic status. This entry into my complaint history damages my reputation. The decision to investigate missing a required class and the discipline meted is capricious and arbitrary. Conversely, I have been informed that the department uses a secret "3rd file, 3rd page, or 3rd screen," not available to the public, to remove complaints from White officers.

c.  The complaints (a) and (b) above serve as retaliation against me for speaking up about racial discrimination and department problems and corruption. The complaint history includes entries for misconduct despite findings of impartial, third party hearing examiners who overturned the discipline. For example, in 1998, when I complained about Captain M. A. Aguirre, I received 11 derogatory entries into my complaint history that remain despite a Hearing Examiner's ruling clearing me of all improprieties. Captain M. A. Aguirre was later fired for complaints similar to those I alleged.

d.  On or about July 2007, I was slandered and called a "problem employee" by Sergeant Daryl Henderson. On the same day, Sergeant Henderson told me that I was known throughout the department by the executive staff as a "trouble maker" and a "problem employee" and the word was that I would never amount to anything in this department.

## 3.  Racial discrimination

a.  On or about December 3, 2007, Jay Gause, a lower-tenured White Male was selected to the position of lieutenant over the Alternative Dispute Resolution Unit, despite his lack of advanced education for the position, qualifications for the job, and experience relative to the position. For the past five years, the lieutenants selected over me for the Alternative Dispute Resolution Unit, have been predominantly White lieutenants, all of whom have either been fired, or who have resigned; none of which possess the qualifications for the position that I have and continue to maintain and advance. Lieutenant J. Gause was a student of mine who I prepared for the assessment center portion of the test he took to achieve a lieutenant promotion. He informed me that I am the reason he was promoted to lieutenant. He is less senior than I.

ZAMORA-2007-4510
COH12773

2

b. The lieutenants who resigned under duress or under normal conditions or who were terminated are: Dan Spjut, Terry Collman, Shannon Broze, and Frank Manzo.

c. I have the highest level of qualifications for the position, having earned certification as a federal instructor/mediator for the Department of Justice. I also achieved training in nearly all levels of mediation: community, police, Spanish, Children's Protective Services, truancy, Justice of the Peace Courts, and family mediation. I have developed curriculum and presented material to officers of many jurisdictions. I mediated community issues on use of force with the Organization of Chinese Americans, the League of Latin American Citizens, the National Association for the Advancement of Colored People, the Anti-Defamation League, the Council of Islamic Relations, and representatives of many Houston area police agencies.

## 4. Age and race discrimination

a. On or about July 2007, a White male lieutenant was pre-selected for a vacancy at the Training Division (Pre-service training) and I was not given the opportunity to compete. Lieutenant David Fausek is a recently promoted lieutenant who was a subordinate of mine at the Crime Analysis Division. He has low seniority and is seven years younger than I am. In 2006 the same position was announced via a department circular. In 2007, there was no vacancy posting and Fausek was selected to the position over me.

b. The transfer of Lieutenant Fausek was announced in supervisory meetings involving officers, civilians, and sergeants, even before Sergeant Fausek was promoted to the rank of lieutenant. Additionally, Sergeant Fausek addressed his subordinates as the incoming lieutenant despite his status as Sergeant in the Special Operations Division.

c. Lieutenant Fausek is less qualified than I (less experience, less knowledge of the job, less education, less seniority, and younger). His selection violated department policy issued by Chief Harold L. Hurtt, that all persons promoted to sergeant and lieutenant are first assigned to patrol functions before receiving highly coveted and specialized assignments.

d. Hispanic Officers and Sergeants (who serve as counselors) have been replaced by White Officers.

## 5. Discrimination in selection of lieutenants for transfer to prestigious assignments

a. White lieutenants unfairly enjoy easier selection and transfer over Hispanics to positions that are prestigious and good for professional development. For example, many vacant positions are not announced, yet they are filled by persons with less qualifications than I. Unannounced lieutenant positions have been filled with persons who have lesser experience, seniority, and education than I to positions such as the Crime Reduction Unit, the Narcotics Division, Vice, Major Offenders, Homicide, Mounted Patrol, High Intensity Drug Task Forces (HIDTA), Solo (Motorcycle) Unit, and Helicopters.

b. In other situations, White lieutenants are allowed to remain in a position for a large portion of their careers, thus limiting the availability of transfer to the position by a Hispanic lieutenant.

3

ZAMORA-2007-4510
COH12774

c. In 1994 I made a complaint regarding discrimination. In the 13 years I have been a lieutenant I have applied for 18 positions and have not been selected for a single position I have sought.

**I seek the following as remedies and relief:**

1. A finding of discrimination
2. A promotion to captain or assistant chief
3. Injunctive relief (use of objective criteria to select candidates for vacancies)
4. Compensatory damages
5. Punitive damages
6. Removal of all derogatory information from my complaint history ("3 by 5") that was lawfully overturned by Hearing Examiners
7. Destruction of all hidden files ("3rd page, 3rd screen, "information files") kept by the department

**I have attached the following as evidence:**

1. Résumé
2. Eligibility lists for captain
3. *Edwards* consent decree
4. Organizational chart for the Houston Police Department
5. COINS report

Subscribed and sworn to me this 20th day of December, 2007.

Signature

Notary Public for the State of Texas

YVONNE M. SALINAS
MY COMMISSION EXPIRES
July 14, 2010

ZAMORA-2007-4510
COH12775

EEOC FORM 131 (5-01)                    **U.S. Equal Employment Opportunity Commission**

|  | PERSON FILING CHARGE |
|---|---|
| Shani A. Dennis<br>Assistant City Attorney<br>CITY OF HOUSTON<br>Legal Department<br>P.O. Box 368<br>Houston, TX 77001 | **Manuel Zamora** |
|  | THIS PERSON *(check one or both)* |
|  | [X] Claims To Be Aggrieved |
|  | [ ] Is Filing on Behalf of Other(s) |
|  | EEOC CHARGE NO.<br>460-2008-01123  (Amended ) |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act                    [ ] The Americans with Disabilities Act

[X] The Age Discrimination in Employment Act             [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [X] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by                    a statement of your position on the issues covered by this charge, with copies of any
   supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate
   the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by                    to the enclosed request for information and send your response to the EEOC
   Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this
   request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or
   expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by
   to
   If you <u>DO NOT</u> wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information,
or any inquiry you may have should be directed to:

| **Gabriel Cervantes,**<br>Investigator | **Houston District Office**<br>**1919 Smith St, 7th Floor** |
|---|---|
| *EEOC Representative* | **Houston, TX 77002** |
| *Telephone*   **(713) 209-3425** | |

Enclosure(s):  [X] Copy of Charge

### CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [X] NATIONAL ORIGIN   [X] AGE   [ ] DISABILITY   [X] RETALIATION   [ ] OTHER

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **August 29, 2008** | R.J. Ruff, Jr., *for*<br>**District Director** | *[signature]* |

ZAMORA-2007-4510<br>COH12776

## **AMENDMENT**

I amend my charge to include:

1. The Houston Police Department's telephone number is 713.308.1600.

2. The Discrimination is based on: Race, National Origin, Retaliation, and Age.

3. Date(s) discrimination took place should reflect a date earlier than 7-01-07. Discrimination and retaliation occurred prior to the 180th day before I originated this complaint, and it continues beyond that date and into December 2007, and up to the present time/date.

_____
Manuel F. Zamora

$\underline{August\ 29,\ 2008}$
Date

STATE OF TEXAS

COUNTY OF HARRIS

Subscribed and sworn to before me this 29th day of ___August___, 2008.

_____
Notary Public

SAMANTHA CHAN SALAZAR
MY COMMISSION EXPIRES
August 17, 2012

ZAMORA-2007-4510
COH12761

## Captain's Tests

### August 15, 2006 – February 15, 2009
25 Candidates

|  | White | Hispanic | Black | Asian | Other |
|---|---|---|---|---|---|
| Passed | 15 | 8 | 2 | 1 |  |
| Promoted | 2 | 1 | 0 | 1 |  |
| Percent |  |  |  |  |  |

### August 19, 2002 – February 19, 2005
56 Candidates

|  | White | Hispanic | Black | Asian | Other |
|---|---|---|---|---|---|
| Passed | 36 | 9 | 11 | 0 |  |
| Promoted | 20 | 1 | 3 | 0 |  |
|  |  |  |  |  |  |

### November 3, 1999 – November 3, 2001
36 Candidates

|  | White | Hispanic | Black | Asian | Other |
|---|---|---|---|---|---|
| Passed | 19 | 8 | 9 | 0 |  |
| Promoted | 1 | 0 | 0 | 0 |  |
|  |  |  |  |  |  |

### July 28, 1998 – July 28, 1999
47 Candidates (1 W/M did not pass)

|  | White | Hispanic | Black | Asian | Other |
|---|---|---|---|---|---|
| Passed | 37 | 3 | 7 | 0 |  |
| Promoted | 6 | 0 | 0 | 0 |  |
|  |  |  |  |  |  |

### October 26, 1995 – October 26, 1996
19 Candidates (1 B/M, 1 H/M, and 1 W/M did not pass)

|  | White | Hispanic | Black | Asian | Other |
|---|---|---|---|---|---|
| Passed | 13 | 1 | 2 | 0 |  |
| Promoted | 2 | 0 | 0 | 0 |  |
|  |  |  |  |  |  |

### August 10, 1994 – August 10, 1995
24 Candidates

|  | White | Hispanic | Black | Asian | Other |
|---|---|---|---|---|---|
| Passed | 17 | 5 | 2 | 0 |  |
| Promoted | 6 | 2 | 0 | 0 |  |
|  |  |  |  |  |  |

$(A + B - C)/\text{Population} = 40\%$ Hispanic Captains

A = Number of current captains X five years each (before a change (e.g. retire/promote)

B = Number of captains to be promoted

C = Number of captains that leave due to retirement, phase down, etc.

Assumptions
1. In 13 years, 4 captains have been promoted, but the gain is one
2. The population changes about 10%/decade)

ZAMORA-2007-4510
COH12769

## State of Texas
## County of Harris

My name is Manuel F. Zamora. I am 50 years of age. I reside at 3207 Rustling Moss Drive, Houston, Texas 77068. My telephone number is 281.537.9525. My Texas Driver's License number is 08579400. I have over 18 years of formal education, having achieved a doctorate degree from the University of Houston. I hereby declare the following:

## EEOC Charge #460-2008-01123
## Addendum: Retaliation, Continuing Action
## Discrimination Based on Race, National Origin, Retaliation, and Age

### BACKGROUND:

1. On or about December 20, 2007, I filed a Federal Civil Rights complaint under Title VII (EEOC), as a Charge of Discrimination with the Texas Workforce Commission Civil Rights Division. I alleged disparate impact on the Houston Police Department Captain's promotional exams; retaliation and a hostile work environment; racial discrimination, age and race discrimination, and discrimination in the lieutenant selection process.

2. Through Glickman and Hughes attorneys, I am a plaintiff in a lawsuit filed in Federal Court that includes violations of U.S.C. 42 §1983, styled as *Zamora et al v. City of Houston* (C.A. No. 4:07-CV-4510).

3. As a Hispanic lieutenant, I have been excluded from consideration for special and lucrative lieutenant assignments, such as the lieutenant assigned to manage the Crime Reduction Unit.

4. I prevailed in a grievance in which "objective consideration" was not used in the lieutenant selection to the Solo Motorcycle Detail. Instead, an argument was presented that experience was emphasized in a lieutenant transfer, and that the policy was going to be changed anyway. Indeed, the Chief changed the lieutenant selection policy and I was disqualified from any transfer consideration. I have not been selected for any lieutenant position I have sought in the past 13 years, regardless of my experience, seniority, skills, knowledge, education, accomplishments, contributions, etc.

5. One lieutenant vacancy filled recently is the lieutenant over the Crime Reduction Unit. I was not selected for this position; I was not considered for it; it was not announced; and a lesser-qualified, less experienced, less senior individual was placed over the unit. The entire supervisory staff was selected to be comprised solely of White males, including some with disciplinary histories.

6. I filed an EEOC charge in December 2007, and in January 2008, attorneys from the law firm, Glickman and Hughes, filed a federal lawsuit in the Southern District of Texas. On or about the first of February, the City of Houston was notified of the lawsuit. Department personnel have knowledge of the lawsuit, including supervisors and managers of the Crime Reduction Unit.

1

## EVIDENCE OF RETALIATION:

7.  During the HPD response preparation, supervisory and management staff were informed of the lawsuit, including the sergeants who have conspired to begin documenting a basis for removal of Officer Christopher Zamora, my son, from the Crime Reduction Unit (CRU), in retaliation for the lawsuit allegations I stated above (#1). Additionally, the documentation to remove my son from his CRU assignment began in February, and has continued to date.

8.  On March 3, 2008, a verbal threat was made by Sergeant Myskowski and Lieutenant Casko toward my son, to force him to depart the Unit within the next two weeks, or they stated his career would be ruined. Furthermore, my son was told that if he left voluntarily, "the water would not be poisoned, and he would not be stabbed in the back."

9.  The following actions against my son are intended to cause me and my son as well as my family with psychological harm and emotional distress. It is evidence of retaliation and a hostile and harassing work environment intended for both my son and me. For example, with respect to my son, Sergeant M. Myskowski, Lieutenant S. Casko, and Captain M. Graham, of the Gang Division, Crime Reduction Unit, have enacted the following actions against my son:

-   On or about February 26, 2008, my son was taken off the streets and ordered to meet with three sergeants and a lieutenant. He was ordered to sign a letter. He did so under duress. The letter stated, in relevant part, "my performance is substandard and needs to improve. Specifically, my knowledge of city ordinances, state law, probable cause, general orders and report writing were addressed. I am aware that my position on the Crime Reduction Unit is not secure and if my performance does not improve it may be cause for my removal." My son was not provided with supporting documentation. My son is a licensed peace officer and has met the department standards with respect to the above. (At this meeting, my son was again threatened with the ruining of his career if he did not transfer out of the unit voluntarily. On March 4, 2008, after four workdays from the above, my son was ordered to meet with Captain M.D. Graham. At that time he was threatened again to leave the unit.)

-   On or about March 3, 2008, several officers overheard the same supervisors talking about removing my son from the unit. The officers reported to another officer (Officer Michelle Mize) who reported to my son that he was targeted for this removal. No other officer has been ordered to leave for any reason.

-   My son was called at 8:30 p.m. on March 4, 2008, and told to report to meet the captain at 1000 hrs. the next morning. No consideration was given for rest (my son was assigned to work the 8:00 p.m. to 6:00 a.m. shift). He was later called during his shift and told to meet the captain at 8:30 a.m., on March 5, 2008. He was later called a third time and told to report Friday, March 3, 2008, at 10:00 a.m.

-   My son was told, "we will not poison the water or stab you in the back if you leave voluntarily," by Lieutenant S. Casko.

-   My son was interrupted by Myskowski while he was conducting arrests/investigations. For example, on March 3, 2008, he was called while making a felony arrest. The sergeant ordered his partner to "escort' my son to the sergeant's office where he was again threatened.

10. On Saturday. May 17, 2008, at about 5:00 p.m., Sergeant Myskowski contacted my son's cellular telephone to order that my son report to the Central Patrol Division at 11:00 p.m. that same night (To place this action in perspective. during the Houston Police Department's mobilization for imminent landfall of Hurricane Katrina (2005) and Rita (2005) all employee's received at least 48 hour's notice of changes to assignments. shifts. and days off.)

Although my son was ordered to leave the Unit or face the threat of the ruining of his career, he was allowed to function normally on patrol (aside from the incidents in which Myskowski and Casko arrived at his scenes to intimidate him) from February 26, 2008, through May 13, 2008. During that time period, my son arrested numerous felons and made worthwhile contributions to the functioning of the CRU crime initiatives. His reports were well-written, his probable cause was exceptional, and his safety techniques and support for fellow officers superb. Officers with disciplinary problems and performance and training issues are normally removed from street duty and placed on desk assignments. This was not done in my son's case.

Prior to the filing of the EEOC complaint and the federal lawsuit, my son was performing well. He was nominated for the Hispanic Officer of the Year, the Investigative Officer of the Year, and the South Patrol Officer of the Year for his bravery, service to the community, and excellence in police work. No deficiencies were documented prior to the lawsuit. He was a top performer.

On Monday, May 12, 2008. during Police Week, my son was publicly awarded the South Patrol Officer of the Year award by Chief of Police Harold L. Hurtt for apprehension of dangerous felons.

At the same time, my son is a relatively new officer. He is learning the job and, as with most new staff, requires minimal supervision. At the same time, HPD training, and TCLEOSE Supervision Course 3434 exist as means to train new supervisors to coach, guide, and counsel their subordinates.

## HOSTILITY AND RETALIATION:

As soon as my EEOC charge was discovered by CRU supervisors, my son was subjected to a hostile work environment that affected me as well:

### 1. Following Directions

On February 26, 2008, Lieutenant Stephen. Casko "suggested" to my son to call about scheduling the Defensive Driving Course (DDC). Sergeant Hayes, who was present, checked MAPPER, and informed the group of supervisors that there was no DDC offered at the HPD Academy.

In roll call sessions, Sergeant Mykowski and Cashdollar informed CRU Officers to register for training through them. This was the most recent order at the time, and contradicted Casko's.

On March 3, 2008, my son was ordered to a meeting with two sergeants and told to sign a letter regarding not calling the HPD Academy. My son had called the Academy and was scolded for not going through the Division Training Coordinator (DTC) to register for DDC. The academy staff informed him that all DDC classes are provided through the E.B. Cape Center. The DTC is responsible for all registration and scheduling of training for officers within their division.

3

ZAMORA-2007-4510
COH12764

Lieutenant Harry Zamora, a shift commander of Traffic & Accident Division, stated that all DDC and all training is registered by Sergeants through MAPPER (software to Maintain and Produce Executive Reports). This has been HPD policy, custom, and practice for about 20 years.

Lieutenant Stephen Casko and Sergeants Mykowski and Cashdollar are required to know HPD policies and procedures regarding registration by officers for any class. All training circulars state "Classes will be listed on MAPPER and officers can sign up by contacting their respective training coordinator." Therefore, this action was meant to intimidate my son and me.

The appropriate procedures are for the Lieutenant to inform my son that Sergeant. Myskowski or Sergeant Cashdollar will identify the course, register him, and require him to attend. My son signed the letter written by another person, on March 3, 2008, under duress. My son completed an on-line DDC on March 6, 2008, achieving a 100% on the written exam.

## 2. Knowledge of laws

On 2-26-08, my son was verbally harassed by Lieutenant Casko in the presence of at least two other supervisors, and told to write a parking ticket in future situations similar to an incident giving rise to the supervisory meeting:

My son and his partner observed a parked car, with its lights off, parked too close to a fire hydrant (per city ordinance), and too far away from the curb (per Texas Traffic Laws). He and his partner stopped to investigate, as this was also suspicious in that my son believed the person may be waiting to commit a crime, possibly waiting for an accomplice. Upon investigation, my son arrested the suspect for felony possession of a firearm, a wanted felony warrant, and possession of a controlled substance. The DA's office accepted charges.

On March 5, 2008, my son made several arrests, including felonies and misdemeanors. He also apprehended a suspect who had 28 warrants. Sergeant Myskowski ignored this significant arrest.

## 3. Comment regarding "arrogance" and "not getting along with others"

Sergeants Myskowski publicly harassed my son by telling him that he is arrogant and does not get along with others. He stated that other officers call in and ask to take off if they are scheduled to ride with my son. This is untrue, as the department prohibits late calls and categorizes such calls as unscheduled leaves, which may result in discipline.

My son's efforts and actions to get along with others include, but are not limited to the following:

- Checking by with officers who need back-up, or assistance, including Lieutenant Casko
- Covering extra employment when co-workers want a day off;
- Sending Mobile Data Terminal (MDT) messages to others to enhance communication and improve team spirit;
- Developing relationships with non-CRU offs by sharing information in high crime areas;
- Backing up and assisting other agency personnel, e.g. Harris County Sheriffs Department;
- Volunteering when a sergeant asks for special assignments; and
- Checking by and assisting supervisors.

4

My son was threatened by Sergeant Myskowski that "officers call in and ask if they are scheduled to ride with you." Furthermore he said officers refuse to ride with my son.

## PSYCHOLOGICAL AND EMOTIONAL DISTRESS AND ANXIETY:

The Crime Reduction Unit is located organizationally and operationally within the Gang Division of the Houston Police Department, which is managed by Captain Mike Graham. Captain Graham is a trained U.S. Naval intelligence officer, skilled in interrogation and psychological mind control. I know this because while a lieutenant over the Field Training Administration Office, Captain Graham reminded me. Captain Graham applied psychological control and fear inducing techniques to my son and me in the following manner:

1. He called or directed a meeting to be called, canceled it, rescheduled it, and intentionally violated Local Government Code requirements for 48 hr. notice prior to such meetings. Further, he disallowed my son the benefit of counsel. The meeting was held on March 3, 2008, at 1000 hrs., on my son's regular day off.

2. He enabled Lieutenant Casko and Sergeant Myskowski to make threats to my son to leave the unit voluntarily instead of being forced out.

3. He allowed Sergeant Myskowski to question my son publicly, during police investigations, in front of felony suspects, as to the basis for my son's arrests.

4. On or about March 31, 2008, he allowed Lieutenant Casko and Sgt. Myskowski to order my son to sign transfer forms for the Kingwood and Airport Divisions, when he knew he would not help my son transfer to these assignments.

5. On or about April 22, 2008, he allowed Lieutenant Casko and Sergeant Myskowski to order my son to sign a transfer form for South Central Division, when he knew my son would not receive this assignment.

6. He enabled officers with discipline problems and performance issues to remain in the division while moving my son out. For example, he did not transfer White Officers with the following disciplinary, and/or training problems:

   • CRU Officers involved in fisticuffs with patrons at a local bar (this was covered up);
   • CRU Officers who continue to receive citizen complaints;
   • CRU Officers who are verbally abusive to individuals (even in the lieutenant's presence);
   • CRU Officers who have wrecked and damaged police vehicles (including one totaled);
   • A CRU Officer who left a loaded handgun on a prisoner booked into the city jail;
   • CRU Officers who have pointed loaded carbines at motorists on traffic stops; and
   • CRU Officers who have substandard performance on report writing and productivity.

## Additional Information: Psychological and Emotional Distress

1. Since around February, 2008, and up to and including May 2, 2008, Chris has been excluded (not invited) to all unit and squad social gatherings and social events held at supervisor's real estate property.

5

ZAMORA-2007-4510
COH12766

2. On or about March 11, 2008. my son advised Sergeant Myskowski that he had a list of four patrol stations that he would seek as his transfer. Myskowski stated he would get back with my son that night. Instead, he left early, did not tell my son. Therefore my son did not provide the list to Captain Graham.

3. During roll call and in the presence of Chris' co-workers, on May 12, 2008, Cashdollar announced that Casko had been awarded the Mid Manager of the Year award. Casko announced civilian award recipients. However, they both intentionally excluded any mention of my son's receipt of the South Patrol Officer of the Year award, despite his presence there.

My son did not know from day to day whether he would be involuntarily transferred, and if so, to which station. He has a family, including a one-year old daughter for which he cares during his time off. The continued questioning, inattention, lack of communication, sarcastic roll call comments, rumors and innuendo, and supervisory attitude exhibited toward my son in front of his peers and in the public's eye serve to continue harassing him for my lawsuit and for my bringing the discrimination issues to the attention of the EEOC and the court. I also feel the psychological harm and emotional distress that is enacted on my son.

4. On Saturday, May 17, 2008, at about 5:00 p.m., Sergeant Myskowski contacted my son's cellular telephone to order that my son report to the Central Patrol Division at 11:00 p.m. that same night. (To place this action in perspective, during the Houston Police Department's mobilization for imminent landfall of Hurricane Katrina (2005) and Rita (2005) all employee's received at least 48 hour's notice of changes to assignments, shifts, and days off.)

5. On Tuesday, May 20, 2008, Sergeant Myskowski intentionally withheld information to make it appear that my son was absent without leave from his new assignment. Myskowski failed to inform my son's lieutenant that my son had prior approval to take leave on May 18th and 19th, which Myskowski himself had approved. This issue arose when the Central Division lieutenant requested to know why my son did not report for work those days. Myskowski had knowledge that my son was approved for a Tactical Shotgun course, which Myskowski and other CRU officers had scheduled weeks prior. Indeed, Myskowski is already "poisoning the water."

The above represent violations of both department policies and procedures and rules and procedures of the Civil Service Commission regarding performance evaluation, supervision, training, respect for officers, professional development, and conduct and behavior. The conduct violates Title VII, discrimination and retaliation with respect to Race and National Origin, and began almost immediately after this charge made to the Texas Workforce Commission Civil Rights Division was discovered by the CRU supervisors of the Houston Police Department.

### RELIEF AND REMEDIES:

I seek the following remedies and relief:

1. A finding of retaliation
2. Reinstatement of my son to the Crime Reduction Unit under supervision of a new sergeant
3. Injunctive relief (creation of a board of examiners prior to removal of an officer from his/her position; training for CRU supervisors, removal of Lieutenant S. Casko from the CRU)
4. Punitive damages

6

ZAMORA-2007-4510
COH12767

**EVIDENCE:**

1. Job Performance Rating for February 28, 2008 ("Effective" rating)
2. Emails (Stephen.Casko@cityofhouston.net; ski3227@comcast.net; Scasko@aol.com); used for work related messages. Also Michael.Graham@cityofhouston.net.
3. Cellular telephone records: Stephen Casko (281.914.1459; 713.594.1934; 281.796.3884; Myskowski, 832.606.6294; Cashdollar, 281.830.5940).
4. Gang Division organizational chart and COINS report for Gang Division.

Subscribed and sworn to me on this 21st day of May, 2008.

_____                  _____
Signature                                                            Manuel F. Zamora

Notary Public for the State of Texas

LISA ANN GARZA
Notary Public, State of Texas
My Commission Expires
April 22, 2012

7