## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MANUEL F. ZAMORA, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:07-4510 |
| | § | |
| CITY OF HOUSTON, | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND ORDER</u>

In this case alleging race discrimination and related claims, Defendant City of Houston has filed a Motion for Summary Judgment [Doc. # 93] ("Defendant's Motion"). Plaintiffs Manuel F. Zamora and Christopher Zamora have filed a response.[1] In addition, Plaintiffs Manuel and Christopher Zamora have filed a Motion for Summary Judgment [Doc. # 92] ("Plaintiff's Motion"), to which Defendants have responded.[2] The remaining Plaintiffs, who appear *pro se*, have not responded to Defendant's Motion.[3]

---

[1]   Plaintiffs' Response to Defendant City of Houston's Motion for Summary Judgment [Doc. # 112] ("Plaintiffs' Response").

[2]   Defendant's Response to Plaintiffs Zamoras' Motion for Summary Judgment [Doc. # 109] ("Defendant's Response").

[3]   Plaintiffs Cesario T. Mosqueda, Toribio R. Hernandez, Jr., Jaime Luis Escalante, and
(continued...)

The Motions are now ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Defendant's Motion should be **granted** and Plaintiffs' Motion should be **denied**.

## I.     BACKGROUND

Plaintiffs are Hispanic employees of the Houston Police Department ("HPD"). They bring claims regarding discriminatory failure to promote and/or transfer, assignments of discriminatory workloads to Hispanic officers, retaliation for activity protected under Title VII, the allegedly low level of HPD's pay stipend for bilingualism, and violations of the Fair Labor Standards Act.

Because the relevant facts differ for each Plaintiff, and for the various claims brought by each Plaintiff, the Court describes the facts as needed in the Analysis section hereafter.

## II.    SUMMARY JUDGMENT STANDARD

---

[3]      (...continued)
Francisco T. Fernandez II remain in this lawsuit.  All other Plaintiffs that originally were party to this lawsuit have been dismissed.  On July 19, 2010, after the time for responding to Defendant's Motion had passed, this Court ordered that, if the *pro se* Plaintiffs wished to file a response, they were required to do so on or before July 30, 2010.  Because none of the *pro se* Plaintiffs has filed a response, the Court assumes that they do not oppose Defendant's Motion.  S.D. TEX. R. 7.3, 7.4.  However, the Court herein will consider the merits of the motion.  *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1022-23 (5th Cir. 1995).  See FED. R. CIV. P. 56(c).

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[4]  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[5]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[6]  The moving party, however, need not negate the elements of the non-movant's case.[7]  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."[8]

---

[4]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[5]   FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[6]   *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[7]   *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[8]   *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[9]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[11]  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[12]  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[13]  Likewise, "conclusory allegations" or

---

[9]    *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

[10]   *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[11]   *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

[12]   *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

[13]   *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002), *overruled on other grounds*, *Grand Isle Shipyards, Inc., v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009).

"unsubstantiated assertions" do not meet the non-movant's burden.[14]  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."[15]  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.[16]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[17]  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[18]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not

---

[14]   *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

[15]   *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

[16]   *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[17]   *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

[18]   *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[19]

## III.   ANALYSIS

### A.   Title VII Disparate Treatment

#### 1.   Manuel Zamora

Plaintiff Manuel Zamora, currently an HPD lieutenant, has served with HPD since 1981.  He states that he is the 35th most senior lieutenant in HPD, that he is one of only four HPD officers with a Ph.D., and that he is the only lieutenant with a Ph.D.[20]  He has authored and published many reports on a variety of law enforcement topics, such as firearms and Taser use, jail cost recovery, anabolic steroids in law enforcement, and fatal police shootings.[21]

Manuel Zamora argues that he was subjected to unlawful disparate treatment when HPD failed to grant him transfers to more prestigious lieutenant positions, and that such transfers would have amounted to promotions.  In order to establish a *prima facie* case of failure to promote under Title VII, Plaintiffs must show that: (1) Manuel

---

[19]   *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

[20]   Response, at 18.   Resume of Manuel Zamora (Exhibit 29 to Plaintiffs' Response) (Ph.D. in Social Work from University of Houston—University Park, with honors).

[21]   *Id*. at 2.

Zamora belongs to a protected class; (2) he applied for and was qualified for a position for which applicants were being sought; (3) he was rejected; and, (4) a person outside the protected class was hired for the position.[22]

The first element of the *prima facie* case is not in dispute. Manuel Zamora is Hispanic and therefore a member of a protected class.

As for the second element, Plaintiffs make sweeping arguments that Manuel Zamora has been denied dozens of promotions over the past nineteen years.[23] These broad, vague arguments are insufficient in themselves to establish a *prima facie* case, which requires Plaintiffs to show that Manuel Zamora applied for and was qualified for a particular position. However, the City acknowledges in its Motion that two of the

---

[22]   *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).

[23]   Plaintiffs contend that Manuel Zamora has "actively sought positions through various communication media such as telephone, e-mail, and in person," listing multiple HPD assistant chiefs to whom he claims to have applied. Response, at 14. In support, Plaintiffs cite multiple exhibits—such as Manuel Zamora's resume, his Alpha Phi Sigma certificate, and HPD circulars—but these documents do not demonstrate that he sought a specific transfer or promotion. Plaintiffs further allege that each time Manuel Zamora sought a position, "he was given various statements that either were not true or that never materialized as stated to him," for example, that a position was not actually vacant, or that it already had been filled. *Id*. at 15. Plaintiffs cite to various depositions of HPD personnel which they allege demonstrate that the personnel violated HPD policy. However, they cite to entire depositions and not to specific pages or statements in the depositions. *See id.* The Court therefore is unable to determine which evidence is offered to support Plaintiffs' claim, *see Malacala*, 353 F.3d at 405 ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment"), and has not found probative evidence in this regard.

challenged transfers—the transfer of Jay Gause to the ADR Unit on December 3, 2007, and of Steve Casko to the CRU (Gang) Unit in 2008—fall within the 300-day limitations period prior to Manuel Zamora's EEOC Charge on December 20, 2007.[24] In his EEOC charge, Manuel Zamora also complained regarding the transfer of David Fausek to the Training Division in July 2007.[25] This transfer also falls within the 300-day period.   The Court therefore addresses the transfers of Gause, Casko, and Fausek.[26]

The City argues as to Gause and Casko that, if Zamora had received the positions these two other officers received, he would have obtained only a lateral transfer, not a promotion, and therefore that Zamora suffered no adverse employment

---

[24]   Defendant's Motion, at 21 (citing Exhibit 19 to Defendant's Motion (Gause's transfer to ADR unit), Exhibit 20 to Defendant's Motion (Casko's transfer to CRU (Gang) Unit)).  An individual claiming discrimination in violation of Title VII must file a charge of discrimination with the EEOC within 300 days after the alleged unlawful employment practice occurred.  *E.E.O.C. v. WC&M Enter., Inc*.  496 F.3d 393, 398 (5th Cir. 2007) (citing 42 U.S.C. § 2000e-5(e)(1)).

[25]   *See* Affidavit attached to EEOC Charge of Manuel Zamora (Exhibit 1 to Plaintiff's Response), at 2-3 (complaining of the transfers of Gause and Fausek).

[26]   Plaintiffs' summary judgment briefing does not respond to Defendant's assertion that other challenged promotions and transfers fall outside the limitations period. Furthermore, Plaintiff's accounts of transfers he allegedly was denied do not provide dates for the relevant transfers. *See, e.g.*, Exhibit 21 to Plaintiff's Response; Plaintiff Manuel Zamora's Objections and Answers to Defendant's Interrogatories (Exhibit 17 to Defendant's Motion), at 4.  Therefore, Plaintiff has failed to demonstrate a genuine issue of material fact as to any basis for his failure-to-promote claim other than possibly the three instances discussed above, *i.e.*, the transfers of Gause, Casko, and Fausek.

action.  Although Defendant has not moved for summary judgment as to Fausek, it

appears that the same argument applies to his transfer, because Fausek was transferred

into a lieutenant position in the Training Division.[27]  A failure to grant an employee

a lateral transfer is not an "adverse employment action" under Title VII.[28]

However, the Fifth Circuit recently held in *Alvarado v. Texas Rangers* that an

employer's denial of a transfer may qualify as an adverse employment action if the

---

[27]     The *prima facie* elements for a failure-to-promote claim typically require a plaintiff
to demonstrate that he applied for the desired position.  However, Plaintiff Manuel
Zamora has alleged that he did not actually apply for many of the transfers he wanted
because the positions were unannounced and the selection procedure was secretive.
*See* Plaintiff's Motion, at 23-24.  Plaintiff specifically alleges that the vacancies filled
by Fausek and Casko were not announced.  *Id*.  He also alleges generally that the
procedure is secretive and based on unfair factors such as friendships.  *Id*. at 24-25
(citing to documents not in the record before this Court).  Defendant has not contested
the allegation that available positions are sometimes unannounced.  HPD's policy
regarding transfers of lieutenants provides that the transfers are "made solely at the
discretion of the Chief of Police based on the Chief's assessment of the overall needs
of the department."  HPD General Order 300-02 (Exhibit 9 to Defendant's Motion),
at 3.  Department policy also does not require that lieutenant vacancies be posted.  *See
id*. (providing that "[l]ieutenant vacancies may be posted so those interested in the
position can make their interest known to the appropriate division manager," and that
a division manager "having a lieutenant vacancy may request a resume from any
lieutenant").

[28]     *Banks v. East Baton Rouge Parish School Bd*., 320 F.3d 570, 575 -576 (5th Cir. 2003)
(a decision made by an employer that only limits an employee's opportunities for
promotion or lateral transfer does not qualify as an adverse employment action under
Title VII); *Burger v. Cent. Apartment Mgmt.*, 168 F.3d, 875, 878-80 (5th Cir. 1999)
(employer's refusal of an employee's request for a "purely lateral transfer," to a
position with the same job title, duties, benefits, and responsibilities, does not qualify
as an adverse employment action under Title VII).  *See McFall v. Gonzales*, 143 F.
App'x 604, 608-09 (5th Cir. 2005).

position sought by the employee was "objectively better" than his or her previous position.[29]  *Alvarado* lists multiple potentially relevant factors, including

> whether the position: entails an increase in compensation or other tangible benefits; provides greater responsibility or better job duties; provides greater opportunities for career advancement; requires greater skill, education, or experience; is obtained through a complex competitive selection process; or is otherwise objectively more prestigious.[30]

The employee's subjective impressions as to the desirability of the new position are not relevant to the inquiry.[31]

Manuel Zamora argues that some lieutenant positions are "coveted or prestigious" because they carry "substantial and significant benefits."[32]  As examples, Plaintiffs assert that positions in the IAD division help prepare lieutenants for promotions, that positions in divisions including the Crime Reduction Unit allow overtime and exempt time credits, and that positions in unspecified divisions provide opportunities for training, professional development, networking, access to sophisticated tools, professional autonomy, and higher pay.[33]  However, Plaintiffs

---

[29]   *Alvarado v. Tex. Rangers*, 492 F.3d 605, 614 (5th Cir. 2007).

[30]   *Id*.

[31]   *Id*.

[32]   Response, at 16.

[33]   Response, at 16-17.

offer no evidence in the summary judgment record supporting these assertions that certain lieutenant positions are "objectively better" than others.[34] There is no affidavit of Plaintiffs, other evidence to which Plaintiffs cite, or expert testimony on the subject.[35]   Manuel Zamora's affidavits submitted with his EEOC charges do not address the issue of whether some lieutenant positions are "objectively better" than others.[36]   Therefore, Plaintiffs have failed to demonstrate a genuine question of

---

[34]   *See id.*  In one instance, in which Plaintiffs assert that more prestigious lieutenant positions provide the opportunity to attend specialized training and conferences, Plaintiffs cite to the Deposition of Manuel Zamora.  However, Plaintiffs cite the Court to no specific pages within the deposition.  The Court is unaware of any evidence supporting Plaintiffs' statement, and has no duty to search the deposition in search of evidence supporting Plaintiffs' argument.  *See Malacala*, 353 F.3d at 405.  Moreover, Plaintiffs fail even to state which specific lieutenant positions provide the superior training.

[35]   *Compare Alvarado*, 492 F.3d at 615 (denial of summary judgment appropriate where plaintiff presented evidence that a position with the Texas Rangers was objectively better because, *inter alia*, appointment to the Rangers was highly competitive, the selection process was complex and rigorous, Rangers work under less supervision and have greater responsibility, and appointment to the Rangers is "generally viewed" as a promotion even though it entails no increase in pay).

[36]   Manuel Zamora's affidavit submitted with his original EEOC charge alleges that Gause and Fausek were selected for lieutenant positions over Zamora, despite having less experience and being less qualified.  Affidavit attached to EEOC Charge of Manuel Zamora (Exhibit 1 to Plaintiffs' Response), at 2-3.  The affidavit also states that "White lieutenants unfairly enjoy easier selection and transfer over Hispanics to positions that are prestigious and good for professional development."  *Id.* at 3.  However, the affidavit does not give any reasons why certain lieutenant positions are better than others.

material fact as to a *prima facie* case of disparate treatment concerning Manuel Zamora's lack of transfers.

Summary judgment is granted on Manuel Zamora's disparate treatment claim.

### 2.   Christopher Zamora

Plaintiff Christopher Zamora is an entry level HPD officer and the son of Plaintiff Manuel Zamora.  He has served with HPD since 2005.  Christopher Zamora was not originally a party to this suit when it was filed by Manuel Zamora and other Plaintiffs in December 2007.  Christopher Zamora alleges that in early 2008, as a result of the suit filed by his father, he was forced by his superiors to transfer out of the prestigious Crime Reduction Unit and was assigned to a much less desirable patrol officer position.  He therefore joined the lawsuit in June 2008.

A plaintiff claiming race discrimination must establish a *prima facie* case by demonstrating that he or she: (1) is a member of a protected class; (2) was qualified for the position in question; (3) was the subject of an adverse employment action; and (4) was treated less favorably than similarly situated persons who were not members of the protected class.[37]  A plaintiff's *prima facie* case creates an inference of intentional discrimination that shifts the burden back to the defendant to articulate a

---

[37]    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

legitimate, nondiscriminatory reason for the adverse employment action.[38]   The

defendant's burden at this stage is a burden of production, not persuasion, and "'can

involve no credibility assessment.'"[39]   If the employer provides such a reason, the

burden then shifts back to the plaintiff to offer evidence to demonstrate a genuine

issue of material fact that "either (1) the defendant's reason is false and is a pretext for

discrimination, or (2) that the employer's reason, while true, is only one of the reasons

for its conduct, and the plaintiff's protected characteristic was a 'motivating factor'

in its decision."[40]   Despite this intermediate burden shifting, the plaintiff at all times

bears the ultimate burden to demonstrate that the defendant intentionally

discriminated.[41]

Christopher Zamora argues that he has established a *prima facie* case of

discrimination because (1) he is Hispanic and therefore a member of a protected class,

(2) he was qualified for his position in the special unit, the Crime Reduction Unit,

(3) he was subjected to an adverse employment action when he was involuntarily

---

[38]     *McDonnell Douglas*, 411 U.S. at 802;  *Lee*, 574 F.3d at 259.

[39]     *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

[40]     *Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 360 (5th Cir. 2009) (citing *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004)).

[41]     *Reeves*, 530 U.S. at 143; *Lee*, 574 F.3d at 259 n.13 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

transferred out of the Crime Reduction Unit based on alleged job performance problems, and (4) similarly situated white officers with more serious performance problems were allowed to stay in the unit.[42]

The Court will assume, without deciding, that Christopher Zamora can establish a *prima facie* case. The City has presented a nondiscriminatory reason for Christopher Zamora's transfer out of the Crime Reduction Unit, namely, his substandard job performance.[43] The burden therefore shifts back to Plaintiffs to show that the City's proffered reason is a pretext for race discrimination or that, although the City's reason is true, Christopher Zamora's race was a "motivating factor" in the City's decision.[44]

Plaintiffs fail to demonstrate a genuine issue of material fact that race discrimination motivated HPD to transfer Christopher Zamora out of the Crime Reduction Unit. In fact, Plaintiffs fail even to argue that race discrimination was the reason for Zamora's transfer. Plaintiffs' theory of the case instead is that HPD personnel forced Christopher Zamora to transfer out of the Crime Reduction Unit, and

---

[42]   Plaintiffs' Response, at 7-8. *See id.* at 10 (listing Caucasian officers who allegedly had more serious performance problems but were not transferred).

[43]   *See* Exhibit 3 to Defendant's Motion (four internal HPD memoranda authored by Christopher Zamora regarding Zamora's various job performance issues, dated February 25, 2008, through March 3, 2008).

[44]   *See Taylor*, 322 F. App'x at 360.

to take a less prestigious patrol position, in order to retaliate against him for the EEOC charge and lawsuit filed by his father.[45]   Christopher Zamora alleges that his HPD superiors created false complaints and charges against him and, within a period of under two weeks in February and March 2008, "papered" his file with these complaints.   He further alleges that his superiors failed to follow proper HPD procedure when they called him to a meeting with little notice and demanded that he transfer out of the unit.   This alleged conduct, if true, may well be improper. However, it does not serve as evidence of discrimination on the basis of a protected characteristic—in this case, race—which is what Title VII requires.

Summary judgment must be granted on Christopher Zamora's disparate treatment claim.

### 3.   *Pro Se* Plaintiffs

---

[45]   *See*, *e.g.*, Plaintiff's Response, at 9 ("Prior to the filing of Manuel Zamora's allegations of discrimination and disparate treatment, there were no documented concerns exhibited by Plaintiff C. Zamora's superiors as to Christopher Zamora's qualifications or performance within the Crime Reduction Unit"); *id*. at 19 ("Plaintiffs assert that there was in fact discrimination against Plaintiff Christopher Zamora which is supported by the fact that Defendant City's Houston Police Department did not even attempt to document, nor had it investigated Plaintiff C. Zamora for poor performance or other misconduct until after Plaintiff Manuel Zamora filed his EEOC Charge"); Plaintiff's Motion, at 12 (Defendant "began investigating Plaintiff Manuel Zamora's son after the EEOC Charge and the Zamora et al lawsuit were filed").

Some *pro se* Plaintiffs appear to bring a claim for disparate treatment based on their race, Hispanic.[46]  As stated above, however, none of the *pro se* Plaintiffs has responded to Defendant's summary judgment motion, and the time for doing so has passed.

Defendant argues *inter alia* that these Plaintiffs cannot satisfy their burden to show a *prima facie* case.  None of the *pro se* Plaintiffs has presented competent summary judgment evidence demonstrating a genuine issue of material fact as to the *prima facie* elements of a disparate treatment claim.[47]  Summary judgment therefore is granted in favor of Defendant on the disparate treatment claims brought by the *pro se* Plaintiffs.

### B.   Title VII Retaliation

#### 1.   Manuel Zamora

Title VII forbids an employer's retaliation against an employee who brings a charge of discrimination.[48]  To establish a *prima facie* case of unlawful retaliation, a

---

[46]   *See* Second Amended Complaint [Doc. # 27].

[47]   *See Lee*, 574 F.3d at 259 (plaintiff claiming race discrimination must establish a *prima facie* case by demonstrating that he or she: (1) is a member of a protected class; (2) was qualified for the position in question; (3) was the subject of an adverse employment action; and (4) was treated less favorably than similarly situated persons who were not members of the protected class).

[48]   42 U.S.C. § 2000e-3.

plaintiff must show that: (1) the plaintiff participated in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the materially adverse action.[49]  If plaintiff establishes a *prima facie* case, the employer must articulate a legitimate, nondiscriminatory reason for its employment action.  Once the employer does so, the burden shifts back to the plaintiff to demonstrate that the Defendant actually was motivated by retaliation.[50]

Defendant seeks dismissal of Manuel Zamora's retaliation claim on the ground that he cannot establish a *prima facie* case of retaliation.  Plaintiffs do not directly address the *prima facie* elements of Manuel Zamora's claim.  In the Second Amended Complaint, Manuel Zamora complains that Defendant retaliated against him by repeatedly denying him promotions and transfers to more prestigious positions.[51]

As for the first *prima facie* element, Plaintiffs do not specifically identify the complaints by Manuel Zamora that led to the alleged retaliation.  The only "protected activities" established in the record are Manuel Zamora's EEOC charges and this

---

[49]    *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).

[50]    *Id*.

[51]    Second Amended Complaint [Doc. # 27], at 27.

lawsuit.[52]  Regarding the second element, the "adverse employment actions" alleged by Plaintiffs in their Second Amended Complaint are retaliatory failures to transfer and promote Manuel Zamora.  However, Plaintiffs do not offer any competent summary judgment evidence that *specific* failures to transfers and/or promote Manuel Zamora were caused by his protected activities, *i.e.*, his EEOC charges or this lawsuit, as required by the third prong.  Indeed most, if not all, of the challenged positions were denied him before his EEOC charges and this lawsuit were filed.  Plaintiffs make only broad arguments that Manuel Zamora has been denied many prestigious assignments for the past nineteen years.[53] These conclusory, expansive allegations do not satisfy Plaintiffs' burden to present specific facts which show "the existence of a genuine issue concerning every essential component of [their] case."[54]  Accordingly,

---

[52]   EEOC Charge of Manuel Zamora (Exhibit 1 to Plaintiffs' Response); Amended EEOC Charge of Manuel Zamora (Exhibit 2 to Plaintiffs' Response). Manuel Zamora apparently has complained multiple times over his HPD career about racial discrimination at HPD, and his complaints apparently have resulted in some changes in HPD procedure.  *See, e.g.*, Plaintiffs' Motion, at 11 (stating that Manuel Zamora filed a grievance May 1994 and prevailed).  However, Plaintiffs do not direct the Court to any other complaints in the summary judgment record.

[53]   *See* Plaintiffs' Response, at 12-13 (alleging denials over past nineteen years); Plaintiffs' Motion, at 22 (Manuel Zamora has suffered retaliation because he has directly and indirectly been denied 20 transfers despite his qualifications).

[54]   *Am. Eagle Airlines*, 343 F.3d at 405 (citation and internal quotation marks omitted).

Plaintiff Manuel Zamora has failed to demonstrate a genuine issue of material fact regarding his retaliation claim.

### 2.    Christopher Zamora

Plaintiff Christopher Zamora alleges that he was forced to leave the Crime Reduction Unit in March 2008, and to take a less prestigious patrol position, in retaliation for complaints about racial discrimination.  Plaintiffs present evidence regarding Christopher Zamora's strong performance with HPD, including several commendations and awards.[55] Plaintiffs argue that, although Defendant claims that Christopher Zamora had performance problems in the Crime Reduction Unit, the complaints against Christopher Zamora all were compiled within a short, seven-day period.[56] Plaintiffs further argue that the complaints against Christopher Zamora's job performance were false.[57]

Even accepting all Plaintiffs' evidence as true, Plaintiffs have not shown a genuine fact issue regarding a *prima facie* case of retaliation.  Plaintiffs must show

---

[55]    Commendations and Nominations regarding Christopher Zamora (Exhibits 38 & 39 to Plaintiffs' Response).

[56]    *See* Memoranda regarding Christopher Zamora (Exhibit 3 to Defendant's Motion) (four memoranda dated between Feb. 25 and Mar. 3, 2008).

[57]    *See* EEOC Charge of Christopher Zamora (Exhibit 5 to Plaintiff's Response); Internal Affairs Complaint of Manuel Zamora, dated May 21, 2010 (Exhibit 31 to Plaintiffs' Response).

that Christopher Zamora engaged in "protected activity" under Title VII, and that the protected activity caused an adverse employment action against him. "An employee has engaged in protected activity when he or she has (1) 'opposed any practice made an unlawful employment practice by this subchapter,' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'"[58] Plaintiffs' only evidence of "protected activity" by Christopher Zamora is his charge filed with the EEOC on May 28, 2008.[59] This charge, however, was filed *after* his transfer out of the Crime Reduction Unit in March 2008, and in fact complains of that particular transfer. Plaintiffs therefore cannot establish that the alleged adverse employment action against Christopher Zamora, *i.e.*, his transfer in March 2008, was caused by his "protected activity" under Title VII.[60]

Instead, the essence of Christopher Zamora's retaliation claim is that he was transferred out of the Crime Reduction Unit in retaliation for the EEOC charge and lawsuit filed by his father, Plaintiff Manuel Zamora. Plaintiffs' briefing urges this

---

[58]   *Aryain*, 534 F.3d at 484 n. 8 (quoting 42 U.S.C. § 2000e-3(a)).

[59]   EEOC Charge of Christopher Zamora (Exhibit 5 to Plaintiffs' Response).

[60]   Although filing a lawsuit also could satisfy the "protected activity" requirement, Christopher Zamora was not a party to this lawsuit when he was transferred out of the Crime Reduction Unit in March 2008. Manuel Zamora and other plaintiffs filed this suit in December 2007, but Christopher Zamora did not join the lawsuit until June 3, 2008. *See* First Amended Complaint [Doc. # 18] (Plaintiff Christopher Zamora mistakenly identified as Charles Zamora).

theory repeatedly, arguing that Christopher Zamora had no problems with his superiors prior to his father's discrimination complaints, but that HPD personnel began investigating him only after his father's EEOC charge and lawsuit were filed.[61] Christopher Zamora's affidavit, filed with his EEOC charge, states, "It was not until knowledge was gained of [the lawsuit filed by Manuel Zamora in December 2007] that I was harassed, intimidated, treated differently than White office[r]s, and transferred out of my specialized assignment at the Crime Reduction Unit."[62]  This allegation is legally insufficient to establish a *prima facie* case of retaliation under Title VII, which requires that a plaintiff demonstrate retaliation because of his own protected activity.[63]

Summary judgment therefore must be granted in Defendant's favor on Christopher Zamora's retaliation claim.

---

[61]   *See*, *e.g.*, Plaintiff's Response, at 9 ("Prior to the filing of Manuel Zamora's allegations of discrimination and disparate treatment, there were no documented concerns exhibited by Plaintiff C. Zamora's superiors as to Christopher Zamora's qualifications or performance within the Crime Reduction Unit"); Plaintiff's Motion, at 12 (Defendant "began investigating Plaintiff Manuel Zamora's son after the EEOC Charge and the Zamora et al lawsuit were filed").

[62]   Affidavit attached to EEOC Charge of Christopher Zamora (Exhibit 5 to Plaintiffs' Response), at 5.

[63]   *Holt v. JTM Indus.*, 89 F.3d 1224, 1227 (5th Cir. 1996) (ADEA claim); *see DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 441 (5th Cir. 2007) (Title VII claim).

### 3.    *Pro Se* Plaintiffs

*Pro se* Plaintiffs Fernandez and Mosqueda alleged in the Second Amended Complaint [Doc. # 27] that Defendant retaliated against them in violation of Title VII.[64]   However, Fernandez and Mosqueda have not responded to Defendant's summary judgment motion, and have not presented evidence demonstrating a genuine issue of material fact as to the *prima facie* elements of a retaliation claim.[65]   Summary judgment therefore is granted in favor of Defendant on Fernandez and Mosqueda's retaliation claims.

### C.    Title VII Disparate Impact

### 1.    Manuel Zamora's Claim Regarding Failure to Promote

Manuel Zamora's disparate impact claim concerns HPD's procedures for promotion of its personnel to the rank of captain.[66]   Plaintiffs' briefing states,

---

[64]    *See* Second Amended Complaint [Doc. # 27].

[65]    *See Aryain*, 534 F.3d at 484 (plaintiff bringing claim of unlawful retaliation must establish a *prima facie* case by showing (1) the plaintiff participated in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the materially adverse action).

[66]    Defendant argues that this claim is untimely because Manuel Zamora was denied a promotion in May 2006, which is outside the limitations period.  *See* Defendant's Motion, at 20.  As held above, a charge of discrimination must be filed within 300 days after the alleged unlawful employment practice.  *WC&M Enter.*, 496 F.3d at 398. Therefore, only promotions that were denied to Manuel Zamora within 300 days before his EEOC charge on December 20, 2007, are within the requisite limitations

(continued...)

"Plaintiff M. Zamora's complaint is that the manner in which Defendant City goes about compiling a list of candidates for promotion to captain as is contained on a promotion list has disparate impact on Hispanic candidates, including himself."[67] Plaintiffs allege a "pattern or practice" of promoting non-Hispanic candidates to the rank of Captain, including Caucasians who were less qualified than Manuel Zamora.[68] Defendant argues in its summary judgment motion and its response that Plaintiffs cannot establish a *prima facie* case.[69]

Disparate impact claims under Title VII involve employment practices that are facially neutral in their treatment of different groups but fall more harshly on one group than another and cannot be justified by business necessity.[70] To establish a *prima facie* case of disparate impact, a plaintiff must (1) identify the employment practice that has the allegedly disproportionate impact and (2) establish causation by

---

[66]     (...continued)
period. However, Plaintiffs also have alleged that Manuel Zamora was on another promotion list when this suit was filed, that the promotion list expired in 2009, and that Zamora again has not received a promotion. The Court need not resolve the ripeness issue because, as held above, Plaintiffs' claim fails on the merits.

[67]     Plaintiffs' Response, at 14.

[68]     Plaintiffs' Motion, at 18-19; Plaintiffs' Response, at 17-18.

[69]     Defendant's Motion, at 1; Defendant's Response to Plaintiff's Motion for Summary Judgment [Doc. # 109], at 2-3.

[70]     *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002) (internal quotation marks and citations omitted).

offering statistical evidence to show that the practice in question has resulted in prohibited discrimination.[71]  "Ordinarily, a *prima facie* case requires a showing of a substantial 'statistical disparity between protected and non-protected workers in regards to employment or promotion.'"[72]

Therefore, to establish a *prima facie* case, Plaintiffs first are required to isolate a specific employment practice by HPD that resulted in a disparate impact on Hispanic officers.  Plaintiffs focus on the examination that is required for candidates for promotion to captain.[73]  They allege that the promotional exams "for 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2002, 2006, and 2009 . . . did not enable more than one or two Hispanic candidates to achieve a promotion."[74]  They also allege that the exam

---

[71]     *Id.*

[72]     *Id.* (quoting *Munoz v. Orr*, 200 F.3d 291, 299-300 (5th Cir. 2000)).  In some cases, a plaintiff may prove a *prima facie* case without statistical evidence.  *Id.* (citing *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810 (5th Cir. 1996) (if plaintiff claiming pregnancy discrimination could prove that all or substantially all pregnant women would be advised by their doctors not to lift 150 pounds, then statistics would not be required to show that pregnant women were disproportionately affected)).

[73]     Plaintiff's Motion, at 17-21.

[74]     *Id.* at 18.  The Fifth Circuit has held that a disparate impact class action "is not the proper mechanism with which to attack the cumulative effects of an employer's practices."  *Munoz*, 200 F.3d at 304.  Rather, plaintiffs must "isolat[e] and identify[] the specific employment practices that are allegedly responsible for any observed statistical disparities."  *Id.* (internal quotation marks and citation omitted).

causes a disparate impact on Hispanic applicants because it does not predict successful performance on the job and is irrelevant to the job.[75]

The second prong of the *prima facie* test requires Plaintiffs to establish causation by offering statistical evidence to show that the practice in question, *i.e.*, the promotion exam, has resulted in prohibited discrimination. Plaintiffs have failed to demonstrate a genuine issue of material fact that the promotional examination has actually caused Hispanics to be underrepresented in HPD's captain ranks. Although Plaintiffs have presented some statistics in the text of their briefing,[76] they fail even to identify the source of the statistics upon which they rely. Moreover, Plaintiffs have provided inadequate explanation of the statistics, and have made no proffer of expert testimony to interpret them. Plaintiff's briefing therefore does not control or account for other variables that may affect the promotion decisions cited.[77] Even assuming that Plaintiffs could establish a correlation between Hispanic race and HPD's failure

---

[75]    *Id*. at 20-21.

[76]    *See*, *e.g.*, Plaintiff's Motion, at 30-31 (table entitled "Captain's Promotional Examinations"); Plaintiff's Motion, at 35-36 (table entitled "Captain Examinations: Total Test Score").

[77]    *Compare McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 276-80 (5th Cir. 2008) (discussing testimony of statistics experts and regression analysis in evaluating a disparate impact claim regarding failure to promote black employees); *Munoz*, 200 F.3d at 301-02 (affirming district court's exclusion of expert who had failed to consider variables other than discrimination in promotion decisions and who had failed to perform a multiple regression analysis).

to promote certain applicants to captain—which is far from clear—Plaintiffs are required to show not only correlation, but causation. A *prima facie* case of disparate impact "requires a 'systemic analysis of the [disparate] effects of all promotional criteria for each rank'."[78] Because Plaintiffs have provided no such systemic analysis, their disparate impact claim cannot survive summary judgment.[79]

## 2. Claim of Stipend Disparity

Five Plaintiffs (Manuel Zamora, Escalante, Fernandez, Hernandez, and Mosqueda) bring a Title VII disparate impact claim on the grounds that their stipend for bilingualism is lower than other HPD stipends, and has increased over time at a lower rate than other stipends paid by HPD, such as the education stipend for those who obtain a college degree. Plaintiffs argue that this policy regarding the bilingualism stipend has a disparate impact on Hispanics, because a higher percentage of HPD officers who are Hispanic qualify for the biligualism stipend than do officers who are non-Hispanic.

---

[78]   *Munoz*, 200 F.3d at 302-03 (quoting *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1367 (5th Cir. 1992) (alteration added by *Munoz*)). *See Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc.*, 2010 WL 1068065, at *11 (S.D. Tex. Mar. 22, 2010).

[79]   Moreover, to the extent any of the *pro se* Plaintiffs bring disparate impact claims that were exhausted before the EEOC, these Plaintiffs also fail to establish a *prima facie* case. Plaintiffs have failed to isolate a facially neutral employment practice that has a disparate impact, have provided no systemic analysis, and have failed to show causation. *See Stout*, 282 F.3d at 860; *Munoz*, 200 F.3d at 302-03.

Defendant argues that Plaintiffs failed to exhaust their administrative remedies for this claim because Plaintiffs' charges filed with the EEOC made no allegation regarding the bilingualism stipend.[80]

Title VII requires employees to exhaust their administrative remedies before seeking judicial relief.[81]  A charge of discrimination filed with the EEOC "enables the EEOC to investigate and, if appropriate, negotiate a resolution with an employer" before a federal suit is filed.[82]  The Fifth Circuit has recognized the "competing policies" that "underlie judicial interpretation of the exhaustion requirement":

---

[80]    *See* EEOC Charge of Manuel Zamora (Exhibit 1 to Plaintiffs' Response) (no allegations regarding bilingualism stipend).  Plaintiff Fernandez alleged in his EEOC charge that he was assigned extra work because of Spanish-speaking skills, that a requested transfer was delayed because of his case load and the need for Spanish-speaking officers, and that his request for extra overtime was denied.  EEOC Charge of Fernandez (Exhibit 1 to Defendant's Motion).  The charge makes no mention of the bilingualism stipend.  *Id.*  For Plaintiffs Escalante, Mosqueda, and Hernandez, Defendant has submitted an EEOC charge filed by the Houston Police Organization of Spanish Speaking Officers ("HPOSSO").  *See* Exhibit 1 to Defendant's Motion. These Plaintiffs, who are proceeding *pro se*, have not filed a response to Defendant's Motion, and have submitted no individual EEOC charges.  The charge filed by the HPOSSO makes various allegations regarding disparate pay, including that Hispanics were denied sergeant rank, denied promotional opportunities, and denied college and job training programs for upward mobility because of heavy workload.  It also alleges that Hispanics had heavier workloads (presumably because of HPD's need for Spanish-speaking officers), longer on-call shifts, and less desirable days off. However, it makes no allegation regarding the bilingualism stipend.

[81]    *McClain*, 519 F.3d at 273; *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).

[82]    *McClain*, 519 F.3d at 273.

> On one hand, the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship. On the other hand, the primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in an attempt to achieve non-judicial resolution of employment discrimination claims.[83]

Therefore, to reconcile the competing policies, the court "construes an EEOC complaint broadly but in terms of the administrative EEOC investigation that can reasonably be expected to grow out of the charge of discrimination."[84] This inquiry requires a "fact-intensive analysis" of the charge that "looks beyond the four corners of the document to its substance."[85]

Plaintiffs argue that their claim regarding the stipend was exhausted because it was, in effect, another "example" of Defendant's discrimination against them.[86] As noted, the EEOC charges filed by Plaintiffs and the HPOSSO challenged increased workloads for Spanish-speaking officers, denial of promotions and training programs

---

[83]     *Id.* (internal citations, quotation marks, and alterations omitted).

[84]     *Id.* (internal citations and quotation marks omitted).

[85]     *Id.*

[86]     Plaintiffs' Response, at 5 ("Plaintiffs contend that the specific facts as alleged are not different causes of action[] separate and apart from the other acts and/or omissions alleged to have been committed by Defendant City, but are in fact examples of different acts and omissions which support their claims of discrimination, retaliation, disparate impact and disparate treatment and therefore their claims have in fact been presented to the EEOC.")

that could have led to promotions, and discriminatory policies regarding on-call duty and days off.  The charges make no mention of the bilingualism stipend or any other stipends to which it might be compared.  All these alleged violations have in common with Plaintiffs' claim about the stipend is that the complaining officers are ones who speak Spanish, most of whom were Hispanic.  There is no indication that, when the EEOC investigated these claims, the agency investigated or should reasonably have been expected to investigate the bilingualism stipend.[87]  Contrary to the complaints of underpayment and extra work in the EEOC charges, the stipend provides a *benefit* to many Hispanic officers.  To the extent that stipend is claimed to be inadequate objectively or in comparison to the amount of other stipends paid by HPD, this criticism was not apparent in the EEOC charges. The Court therefore holds that Plaintiffs' claim regarding the bilingualism stipend was not exhausted before the EEOC.

### 3.      Christopher Zamora's claim regarding discriminatory assignments

Defendant argues that Plaintiff Christopher Zamora's disparate impact claim, which pertains to allegedly discriminatory work assignments, was not exhausted

---

[87]     Indeed, Plaintiffs have not demonstrated that the EEOC was told in other submissions, by Plaintiffs or others, that the stipend was an issue, or that the EEOC perceived it to be an issue.

before the EEOC.   It is far from clear, based on the Second Amended Complaint, that

Christopher Zamora brings a disparate impact claim in this case.  Nevertheless, to the

extent that he brings such a claim, the claim was not exhausted before the EEOC[88] and

therefore is not properly before this Court.[89]

### D.    Fair Labor Standards Act

*Pro se* Plaintiffs Mosqueda and Hernandez claim that, because they were

members of HPD's all-Hispanic Chicano Squad, HPD required they be "on call"

during parts of their days off, in violation of the Fair Labor Standards Act, 29 U.S.C.

§ 201 *et seq*. ("FLSA").  They further allege that Defendant committed the FLSA

violations willfully.[90]

Defendant moved for summary judgment based on FLSA's statute of

limitations.  Claims under FLSA must be brought within two years after the cause of

action accrues, or within three years if the alleged violation was willful.[91]  Plaintiffs

---

[88]    Christopher Zamora's EEOC charge uses the heading "disparate impact," but makes
no allegation regarding a facially neutral employment policy that had a disparate
impact on Hispanic officers.  EEOC Charge of Christopher Zamora (Exhibit 5 to
Plaintiffs' Response).  Rather, the charge complains of the events in the spring of
2008 surrounding Zamora's unrequested transfer out of the Crime Reduction Unit.

[89]    *McClain*, 519 F.3d at 273; *Pacheco*, 448 F.3d at 788.

[90]    Second Amended Complaint [Doc. # 27].

[91]    *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 597 F.3d 546, 552 (5th Cir.
2009) (citing 29 U.S.C. § 255(a)).

Mosqueda and Hernandez have failed to respond to Defendant's Motion. Although the Second Amended Complaint alleges that Defendant's violation was willful, Plaintiffs have failed to produce any summary judgment evidence in support of the willfulness contention, or of any non-time-barred FLSA claim.[92]

Because Plaintiffs have proffered no evidence that their FLSA claim was timely, summary judgment is granted for Defendant on all FLSA claims.

### E.    Section 1983

Plaintiffs bring a claim under Section 1983, which provides that a municipality is liable for "a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy."[93] Plaintiffs do not articulate, either in the Second Amended Complaint [Doc. # 27] or their summary judgment briefing, facts or legal arguments supporting their Section 1983 claim that differ from those proffered in support of their Title VII claims.

---

[92]    FLSA requires that non-exempt employees who work more than forty hours in a work week must be paid one and one-half times their regular rate of pay. 29 U.S.C. § 207(a)(1); *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010). Because Plaintiffs have not responded to the summary judgment motion, they have proffered no evidence that they worked more than forty hours per week, or that they otherwise satisfy the requirements of FLSA.

[93]    *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984); 42 U.S.C. § 1983.

A plaintiff is permitted to seek relief under both Section 1983 and Title VII for claims of racial discrimination in an employment setting.[94]   However, "specific consideration of these alternate remedies for employment discrimination . . . is necessary only if their violation can be made out on grounds different from those available under Title VII."[95]   The elements of the substantive cause of action are identical.[96]

In this case, Plaintiffs have identified no grounds for their claim under Section 1983 different from those supporting their Title VII claims.   Therefore, the Court applies its Title VII analysis to the Section 1983 claims, and summary judgment is granted for Defendant.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, it is hereby

---

[94]   *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 548-50 (5th Cir. 1997); *Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1575-76 (5th Cir. 1989); *Parker v. Miss. State Dep't of Pub. Welfare*, 811 F.2d 925, 927 n.3 (5th Cir. 1987). *See Robertson v. Bd. of Supervisors*, 273 F.3d 1108 (5th Cir. 2001).

[95]   *Johnston*, 869 F.2d at 1575 (internal citations and quotation marks omitted); *see, e.g.*, *Robertson*, 273 F.3d 1108 (remanding for consideration of Section 1981 claim because district court had dismissed plaintiffs' Title VII claim on grounds that defendants did not meet the statutory definition of an employer).

[96]   *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 n. 3 (5th Cir. 1983) (en banc) ("[W]hen § 1983 is used as a parallel remedy with Title VII in a discrimination suit, the elements of the substantive cause of action are the same under both statutes."); *see Lee v. City of San Antonio*, 192 F. App'x 258, 261 (5th Cir. 2006).

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 93] is

**GRANTED**.  It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 92] is

**DENIED**.

All pending claims are dismissed with prejudice.  A separate final judgment will

issue.

SIGNED at Houston, Texas, this **12**[th] day of **August, 2010**.

Nancy F. Atlas
United States District Judge