**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER ZAMORA, Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:07-4510 |
| | § | |
| CITY OF HOUSTON, Defendant. | § | |

**MEMORANDUM AND ORDER**

This Title VII retaliation claim is before the Court on remand from the Fifth Circuit. Defendant City of Houston has filed a Renewed Motion for Summary Judgment [Doc. # 149] ("Defendant's Motion"). Plaintiff Christopher Zamora has responded and has filed his own Motion for Summary Judgment [Doc. # 155] ("Plaintiff's Motion"), to which the City has responded.[1] The Motions are ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the Motions should be **denied**.

1 In addition, the City has filed a Motion to Strike Plaintiff's Motion for Summary Judgment [Doc. # 156]. This motion is denied, as explained hereafter.

## I. BACKGROUND

The case at bar originally was filed by multiple plaintiffs including Manuel Zamora, a Lieutenant with the Houston Police Department ("HPD"). Manuel Zamora is the father of Plaintiff Christopher Zamora ("Plaintiff" or "Zamora"). Plaintiff Zamora has been an HPD officer since 2005.

As set forth in this Court's previous summary judgment ruling,[2] Zamora states that, in early 2008, he was forced by his HPD superiors to transfer out of the prestigious Crime Reduction Unit ("CRU") and to accept a less desirable position as a patrol officer. Zamora alleges that the officials who forced him to transfer were retaliating against him because in December 2007 his father, Manuel Zamora, filed a Charge of Discrimination with the EEOC and the instant lawsuit against HPD. Plaintiff was not a party to this lawsuit until June 2008.

On August 12, 2010, this Court entered a Memorandum and Order granting summary judgment in favor of Defendant City of Houston on all claims asserted by various Plaintiffs. The Court ruled pursuant to Fifth Circuit precedent that Christopher Zamora's claim of retaliation under Title VII was not legally viable. In particular, the Court held that binding Fifth Circuit authority precluded Zamora's Title VII retaliation claim. Under the prevailing rule, Zamora could not satisfy the

---

2 Memorandum and Order, dated Aug. 12, 2010 [Doc. # 132].

*prima facie* requirements of such a claim because his claim relied upon his father's "protected activity" under Title VII—in particular, the filing of an EEOC Charge and this suit in December 2007—and not on Zamora's personal protected activity.[3]

While this case was on appeal to the Fifth Circuit, the Supreme Court decided *Thompson v. North America Stainless, LP*, in which it held that an employee was entitled to bring a Title VII retaliation claim based upon retaliation suffered in response to the "protected activity" of a co-worker, who in *Thompson* was the plaintiff's fiancée.[4] Because *Thompson* squarely addressed the point upon which this Court based its dismissal of Zamora's retaliation claim, the Fifth Circuit remanded that claim to this Court for reconsideration of the City's summary judgment motion.[5] On remand, Christopher Zamora is the only remaining Plaintiff in this suit. The City has renewed its motion for summary judgment on Zamora's retaliation claim.

---

[3] Memorandum and Order, at 21 & n. 63 (Zamora's allegation "is legally insufficient to establish a *prima facie* case of retaliation under Title VII, which requires that a plaintiff demonstrate retaliation because of his own protected activity") (citing *Holt v. JTM Indus*., 89 F.3d 1224, 1227 (5th Cir. 1996) (ADEA claim); *DeHart v. Baker Hughes Oilfield Operations, Inc*, 214 F. App'x 437, 441 (5th Cir. 2007) (Title VII claim)).

[4] *Thompson v. N. Am. Stainless, LP*, 131 S.Ct. 863 (2011).

[5] Fifth Circuit opinion, *Zamora v. City of Houston*, No. 10-20625 [Doc. # 147]. The Fifth Circuit affirmed the Court's holdings dismissing all other claims.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[6] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[8] The moving party, however, need not negate the elements of the non-movant's case.[9] The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."[10]

---

6 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

7 FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

8 *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

9 *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

10 *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[11] "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[12]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[13] However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[14] The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[15] Likewise, "conclusory allegations" or

---

11 *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

12 *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

13 *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

14 *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999)).

15 *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

"unsubstantiated assertions" do not meet the non-movant's burden.[16] Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."[17] In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.[18]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[19] A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[20]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary

---

16 *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

17 *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

18 *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

19 *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

20 *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[21]

## III. ANALYSIS

To establish a *prima facie* case of unlawful retaliation under Title VII, a plaintiff must show that (1) he engaged in a "protected activity"; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action.[22] If plaintiff establishes a *prima facie* case, the employer must then articulate a legitimate, nondiscriminatory reason for its employment action.[23] Once the employer does so, the burden shifts back to the plaintiff to demonstrate that the protected activity was a "but for" cause of the adverse employment action.[24]

The City's renewed summary judgment motion argues that Zamora cannot satisfy the causation prong of the *prima facie* case because he cannot show that HPD's decision to transfer him was "based in part on knowledge of the employee's protected

---

21 *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

22 *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 129 (5th Cir. 2011).

23 *Id*.

24 *Id*.

activity."[25] "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct."[26] The City argues that Zamora has no summary judgment evidence that his superiors in CRU knew that his father, Manuel Zamora, had engaged in protected activity.

As proof, the City cites to the affidavit and deposition of Lieutenant Stephen Casko, the officer in charge of CRU. Casko states in his affidavit that he selected Zamora to be part of the CRU but, "when I noticed that Officer Zamora would not be a good fit in the Unit, I requested to Captain Graham that he be transferred."[27] In his deposition, Casko testified as follows:

Q: Did you know that a lawsuit had been filed in December 2007?

A: No, I did not.[28]

The City argues that this testimony from Casko warrants summary judgment in its favor.[29] However, the question to Casko is ambiguous, because it could be interpreted

---

25 *Sherrod v. American Airlines, Inc*., 132 F.3d 1112, 1122 (5th Cir. 1998).

26 *Chaney v. New Orleans Public Facility Management, Inc*., 179 F.3d 164, 168 (5th Cir. 1999).

27 Affidavit of Lieutenant S.F. Casko (Exhibit 5 to Defendant's Motion), at 1.

28 Deposition of Steven Casko (Exhibit 6 to Defendant's Motion), at 100.

29 The City also cites to Christopher Zamora's deposition, in which he was asked (continued...)

either as asking whether Casko ever knew that a lawsuit had been filed in December 2007,[30] or as asking whether Casko knew in December 2007 that a lawsuit had been filed.

The causation issue in this lawsuit hinges on what Casko, and possibly other officers superior to Zamora, knew in late February and early March 2008, which is when Zamora was transferred out of the CRU. The deposition testimony cited above does not establish whether or not Casko was aware of this lawsuit at the pertinent times in 2008. Furthermore, Casko does not aver in his affidavit when he became aware of Manual Zamora's allegations. Elsewhere in his deposition, Casko testified that he did not think he had seen Manuel Zamora's EEOC Charge, which also was filed in December 2007, but later indicated that he may have discussed the Charge's allegations with his superiors:

---

29 (...continued)
whether he had any information that Lieutenant Casko or Sergeant Myskowski knew about Manuel Zamora's lawsuit. Deposition of Christopher Zamora, March 9, 2010 [Doc. # 150], at 72-74. Zamora ultimately testified that he did not know whether Casko and Myskowski knew about his father's lawsuit. *Id*. at 74. However, Zamora's knowledge of what Casko and Myskowski knew is not relevant to the issue of what his superiors actually knew.

30 Casko clearly knew at some point that Manuel Zamora's lawsuit had been filed, since he was deposed in connection with the suit. However, it is unclear whether he was being asked about, or knew, the date of the lawsuit's filing. It also is unclear whether he knew about the lawsuit prior to Plaintiff's transfer.

Q: There was an initial EEOC complaint that was filed by Lieutenant Manuel Zamora in December of 2007.

A: I don't think I was involved in that one or ever saw it, ***but maybe I was***.

Q: That one involved the assignment that you received at the CRU unit as a lieutenant.

A: Okay. I don't think I know about that one, then.

Q: Okay. Didn't you communicate with Captain Graham about the EEOC complaint that had been filed by Lieutenant Zamora concerning the assignment to the CRU unit that you received?

A: ***We talked about it, yes***.

Q: Okay. So that would have been December 2007 or later?

A: I would suspect, yes, but it's becoming apparent that I'm not clear on the difference of the EEOC complaints.[31]

Again, Casko was not asked specifically whether he had discussed Manuel Zamora's EEOC complaint before Christopher Zamora was transferred in March 2008.

There is a genuine issue of material fact about Casko's knowledge in February/March 2008 of Manuel Zamora's lawsuit and EEOC Charge. Thus, there is a genuine and material question about the causal link between Manuel Zamora's protected activity and Plaintiff Zamora's transfer out of CRU. The City has not demonstrated entitlement to summary judgment.

---

31 *Id*. at 20-21 (emphasis added). Because there were several EEOC Charges related to this lawsuit, there was some confusion in the deposition questioning and testimony.

Other evidence in the record reinforces this conclusion. The Fifth Circuit has held that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation."[32] In this case, the time between Manuel Zamora's EEOC Charge and the filing of his discrimination suit, on the one hand, and Christopher Zamora's transfer, on the other, was less than three months.[33]

In addition, although the City argues that Zamora was transferred because of his substandard job performance, Zamora has presented evidence demonstrating this explanation may be pretext and has raised a genuine issue of material fact in this regard. The City's evidence of Zamora's "substandard performance" consists mainly of three memoranda, which are dated February 25, February 26, and March 3, 2008.[34] Casko states that, after these documents were prepared, Zamora "continued to perform poorly and was eventually asked to leave the unit."[35] However, Zamora was asked to

---

32 *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). *See Shackelford v. Deloitte & Touche, LLP.*, 190 F.3d 398, 409 (5th Cir. 1999) ("the combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment").

33 *See Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that a "time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes") (internal citations and quotation marks omitted).

34 Casko Affidavit, at 1-2.

35 *Id*. at 2.

leave the CRU on March 7, 2008—only ***four days*** after the third memorandum was drafted and ***ten days*** after the first memorandum. This evidence of timing casts doubt on the City's purported reason for the transfer.

Moreover, Zamora challenges the City's contentions regarding his job performance by proffering evidence of multiple commendations and awards for his outstanding work as a police officer, both before and after his transfer out of CRU. For example, Zamora presents a flyer listing him as a recipient of HPD's "South Patrol Command Officer of the Year" in 2008, the same year that he was transferred out of CRU for allegedly substandard performance.[36] Although the City objects to the exhibit on the grounds that it was not produced in discovery,[37] this particular document refers to a program sponsored by HPD, and thus was within Defendant's possession, custody, or control. Defendant's objection to this document therefore is overruled. The document demonstrates the existence of a genuine issue of material fact on the pretext element of Zamora's retaliation claim.

---

36 Exhibit 3 to Plaintiff's Motion.

37 City of Houston's Objections to and Motion to Strike Documents Submitted in Opposition to its Motion for Summary Judgment [Doc. # 156].

Although Zamora has filed a cross-motion for summary judgment, his motion points to no specific facts that establish the absence of fact issues warranting summary judgment in his favor. His motion is denied.

Finally, the City has objected to much of the evidence presented with Zamora's motion.[38] Given the Court's denial of summary judgment to both parties, the Court declines to rule on each objection. To the extent the parties need additional information regarding allegedly new information identified in Defendant's Motion to Strike, they may obtain such discovery.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Renewed Motion for Summary Judgment [Doc. # 149] is **DENIED**. It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 155] is **DENIED**. It is further

**ORDERED** that Defendant's Motion to Strike Plaintiff's Motion for Summary Judgment [Doc. # 156] is **DENIED in part** as stated herein, and is in all other respects **DENIED without prejudice**. The parties may undertake additional discovery

---

38 *See id*.

provided that written discovery requests are served **on or before September 26, 2011**. Discovery must be completed by **November 4, 2011**. It is further

**ORDERED** that the parties are to **MEDIATE** this case before the Honorable George C. Hanks, Jr., United States Magistrate Judge, **on or before November 30, 2011**, and must promptly contact Judge Hanks' case manager to set a time for the mediation. It is further

**ORDERED** that the parties must file a Joint Pretrial Order **on or before December 6, 2011**. It is further

**ORDERED** that the parties must appear for Docket Call on **December 14, 2011** at **3:00 p.m.** in Courtroom 9-F, United States Courthouse, 515 Rusk, Houston, Texas 77002.

SIGNED at Houston, Texas, this **13th** day of **September, 2011**.

Nancy F. Atlas
United States District Judge