# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER ZAMORA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:07-4510 |
| | § | |
| CITY OF HOUSTON, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This Title VII retaliation claim is before the Court on remand from the Fifth Circuit.  After the Court permitted Plaintiff Christopher Zamora to file a First Supplement to Plaintiff's Second Amended Complaint [Doc. # 184] ("Supplemental Complaint"), Defendant City of Houston filed a Motion for Partial Summary Judgment [Doc. # 202]  ("Motion").  Plaintiff Zamora responded [Doc. # 204], the City filed a Reply [Doc. # 208], and Zamora filed a Surreply [Doc. # 209].[1]  The Motion is ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the City's Motion should be **denied**.

---

[1]      The City filed a Motion to Strike Plaintiff's Surreply [Doc. # 210] urging that the Surreply be stricken because it was unauthorized and  untimely filed.  This motion also will be **denied**.

I.   **BACKGROUND**

Plaintiff Zamora has been an officer with the Houston Police Department ("HPD") since 2005.  Zamora alleges that, in early 2008, he was forced by his HPD superiors to transfer out of the prestigious Crime Reduction Unit ("CRU") and to accept a less desirable position as a patrol officer.  Zamora claims that the officials who forced him to transfer were retaliating against him because in December 2007 his father, Manuel Zamora, who was then a Lieutenant with HPD, filed a Charge of Discrimination with the EEOC and then filed the instant lawsuit against HPD.  Plaintiff filed his own EEOC charge in May 2008, after his transfer out of CRU, and joined this lawsuit in June 2008.

In 2010, based on Fifth Circuit law at the time, this Court held that Zamora could not show a *prima facie* case of retaliation under Title VII because his claim relied on his father's "protected activity" (in particular, his father's filing of an EEOC Charge and the instant lawsuit) rather than Zamora's own protected activity.  Based on an intervening change in the law,[2] the Fifth Circuit remanded Zamora's retaliation claim to this Court [Doc. # 147].  This Court then denied a renewed motion for summary judgment from the City [Doc. # 160], and granted in part Zamora's motion to supplement his complaint [Doc. # 183].

---

[2]    *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863 (2011).

Plaintiff's Supplemental Complaint [Doc. # 184], filed on December 7, 2011, added new alleged adverse employment actions, including a "ten-day temporary suspension"[3] and a denial of Zamora's request to transfer to the Narcotics Division. The City now moves for partial summary judgment, arguing that no summary judgment evidence supports these new claims.

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[4]  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]

---

[3]    The term "ten-day temporary suspension," while appearing redundant, is the term used by HPD for the discipline Zamora received.  *See* Memorandum from Chief C. McClelland, dated Nov. 15, 2010 (Exhibit 13 to Motion) ("McClelland Memorandum").  For simplicity's sake, the Court refers to this discipline as a "suspension."

[4]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[5]    FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[6]  The moving party, however, need not negate the elements of the non-movant's case.[7]  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."[8]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[9]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable

---

[6]     *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[7]     *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[8]     *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

[9]     *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

[10]    *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

to the nonmoving party.[11]  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[12]  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[13]  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[14]  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."[15]  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.[16]

---

[11]  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

[12]  *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

[13]  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

[14]  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

[15]  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

[16]  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[17]   A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[18]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[19]

## III.   <u>ANALYSIS</u>

As set forth in this Court's prior opinions, a plaintiff can establish a *prima facie* case of unlawful retaliation under Title VII by showing that (1) he engaged in a "protected activity"; (2) an adverse employment action occurred; and (3) a causal link

---

[17]   *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

[18]   *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

[19]   *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

existed between the protected activity and the adverse employment action.[20]   If plaintiff establishes a *prima facie* case, the employer must then articulate a legitimate, non-retaliatory reason for its employment action.[21]   Once the employer does so, the burden shifts back to the plaintiff to demonstrate that the protected activity was a "but for" cause of the adverse employment action.[22]

The City moves for summary judgment on two adverse employment actions added in Plaintiff's Supplemental Complaint: Zamora's ten-day suspension on November 15, 2010; and the denial of Zamora's requested transfer to Narcotics, which Zamora applied for in the Fall of 2010.   The City also argues that Zamora cannot establish a causal connection between the protected activity and the adverse employment action, because 26 months elapsed between them.    Finally, the City argues that it has provided legitimate, non-retaliatory reasons for the alleged adverse employment actions.

## A.    Ten-Day Suspension

On November 15, 2010, HPD Chief McClelland issued Zamora a ten-day

---

[20]    *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012).

[21]    *Id.*

[22]    *Id.*

suspension letter.[23]  Zamora alleges that this suspension was retaliatory.

Zamora's suspension was based on a finding that he had been untruthful in an administrative statement he submitted to HPD's Internal Affairs Division ("IAD"). On May 21, 2010, Lieutenant Manuel Zamora, father of Plaintiff Christopher Zamora and an original Plaintiff in this suit, filed a complaint with IAD.  Manuel Zamora alleged that multiple persons within HPD had harassed and retaliated against Christopher Zamora because Manuel Zamora had filed the instant lawsuit against HPD.[24]  Sergeant Dick Bogaard of IAD investigated the complaint and interviewed more than twenty officers, including Christopher Zamora, who provided a statement on June 15, 2010.[25]  The statement provided responses to a series of written questions, presumably posed to Zamora by Bogaard.  Zamora's statement, like Manuel Zamora's IAD complaint, pertained to Christopher Zamora's transfer in 2008 out of the CRU, in other words, the events that form the basis of his retaliation claim before this Court.

The IAD then, based on Zamora's statement, initiated a charge against him for

---

[23]    McClelland Memorandum (Exhibit 13 to Motion).

[24]    Memorandum from Lt. T. M. Spjut, dated Aug. 23, 2010 (Exhibit 9 to Motion) ("Spjut Memorandum"), at 1.  Manuel Zamora complained that Executive Assistant Chief Kirk Munden, Captain Michael Graham, Lieutenant Stephen Casko, and Sergeant Mark Myskowski committed various infractions including perjury, harassment, and retaliation.  *Id*.

[25]    Memorandum from C. Zamora, dated June 15, 2010 (Exhibit 4 to Motion).

untruthfulness.  On August 23, 2010, relying on Sergeant Bogaard's investigation, HPD Lieutenant Spjut found "sufficient evidence to prove an allegation of <u>Untruthfulness</u>" against Zamora, based in part on inconsistencies between Zamora's statements and those of other officers.[26]   Chief McClelland relied upon this investigation when suspending Zamora.

Zamora appealed the suspension.  On April 28, 2011, an independent Hearing Examiner overturned Zamora's suspension for untruthfulness:

> To find untruthfulness on [the instances relied upon by Chief McClelland] after two years recollection is quite a stretch.  Officer Zamora may be defensive, glib and perceive the world differently than his superiors.  However this does not prove he is untruthful or intentionally, knowingly or recklessly misrepresented facts or misleads others.  The evidence is not there to prove this case.  He perceived certain circumstances and the city perceived other circumstances.  If Officer Zamora cannot perform his duties that should be addressed but he should not be disciplined for the [cited statements in] his administrative statement when he was trying to give full information from two years ago without notes.[27]

---

[26]   Spjut Memorandum, at 33 (emphasis original).  The others interviewed by IAD in connection with the charge of untruthfulness included Zamora's former supervisors Casko, Myskowski, and Graham, all of whom had been involved in the 2008 events.

[27]   Award, In the Matter of the 10 Day Temporary Suspension of Christopher Zamora and the City of Houston, dated April 28, 2011 (Exhibit 6 to Response) ("Award"), at 8.

The Hearing Examiner found that the City had not proven that Zamora was untruthful and that Zamora should be made whole.[28]

The City concedes that Zamora has satisfied the first two elements of a *prima facie* case, but argues that he cannot establish a causal connection between the protected activity in this case, *i.e.*, Manuel Zamora's EEOC Charge and this lawsuit (both filed in 2007), and Plaintiff Zamora's 2010 suspension. The decision to suspend Plaintiff Zamora was made by Chief McClelland, as recommended by Lieutenant Spjut and others in the hierarchy for recommendation of discipline, and based on investigation by Sergeant Bogaard. In deposition, Zamora testified that he did not believe that the HPD officials who meted out his discipline, including Chief McClelland and numerous other HPD personnel, personally had retaliated against him.[29] The City therefore argues that Zamora has failed to show a causal link between the suspension and his father's EEOC complaint.

Zamora invokes the "cat's paw" theory, arguing that he has presented sufficient evidence of a causal connection because HPD's investigators and decisionmakers

---

[28]     *Id.*

[29]     *See* Deposition of Christopher Zamora (Exhibit 17 to Motion), at 197-208 (Zamora testified that he did not believe that McClelland, Captain Zera, Chief Montalvo, or others had retaliated against him).  Zamora also testified that he did not believe that Lieutenant Spjut had retaliated against him, and that he did not know Spjut.  *Id.* at 208.  Zamora apparently was not asked whether he believed Bogaard, the investigating officer, had retaliated against him.

were directly influenced by the statements submitted to them by Zamora's former supervisors, who allegedly retaliated against him in 2008 and provided IAD with statements regarding the contested 2008 events.  Under the cat's paw theory, Zamora must show that those with retaliatory animus against him "'possessed leverage, or exerted influence, over the titular decisionmaker.'"[30]  Plaintiff must provide evidence—direct or circumstantial—that the actions of those with retaliatory animus were a "proximate cause" of the adverse employment action.[31]

---

[30]    *Hernandez*, 670 F.3d at 659 (quoting *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) and citing *Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011)).  *See Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002); *Long v. Eastfield College*, 88 F.3d 300, 307 (5th Cir. 1996).

[31]    *Staub*, 131 S. Ct. at 1192 ("Proximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged, and excludes only those links that are too remote, purely contingent, or indirect.") (internal citation, quotation marks, and alteration omitted).  Although *Staub* construed the Uniformed Services Employment and Reemployment Rights Act of 1994, the Court noted that the relevant statutory language was "very similar to Title VII," *id*. at 1191, and courts in the Fifth Circuit subsequently have applied *Staub*'s holding to Title VII cases, including retaliation claims.  *See Gollas v. Univ. Of Tex. Health Sci. Ctr. at Houston*, 425 F. App'x 318, 326 (5th Cir. 2011); *Baldwin v. Holder*, 2011 WL 2078614, *11 (S.D. Tex. May 26, 2011) (Ellison, J.).  Fifth Circuit authority prior to *Staub* had required a showing that the decisionmaker had merely "rubberstamped" the recommendation made by persons with animus against the plaintiff, and had provided that the causal link could be broken by an "independent investigation" into the reasons for the adverse employment action.  *See Mato v. Baldauf*, 267 F.3d 444, 450 (5th Cir. 2001).  However, the *Staub* decision rejected such a "hard and fast" rule, holding that an independent investigation does not necessarily break the causal link.  *Staub*, 131 S. Ct. at 1193.

The Court holds that, at this stage of the litigation and drawing all inferences in favor of Plaintiff, the nonmoving party, Defendant has not shown that there is no genuine issue of material fact as to causation. The causation question before the Court is whether Bogaard and Spjut, and through them, McClelland, were influenced by those who allegedly had retaliatory animus against Zamora (primarily Casko, Myskowski, and Graham).

Although Zamora has provided no direct evidence showing that McClelland, Bogaard and Spjut were influenced by those with retaliatory animus, there is sufficient circumstantial evidence to demonstrate a genuine issue of material fact on this issue. First, the discipline against Zamora involved the same set of facts as those underlying his retaliation claim before this Court. As stated above, the decision to initiate discipline proceedings against Zamora and to suspend him grew from Manuel Zamora's IAD complaint, filed in 2010. The 2010 IAD complaint, in turn, grew from the Zamora's transfer out of CRU in 2008, the very facts that serve as the basis of Christopher Zamora's retaliation claim before this Court. The facts and assessments upon which Chief McClelland purported to rely to discipline Zamora pertained to events that occurred in the CRU in the months leading up to Zamora's transfer out of that unit in May 2008, which transfer was his original claimed adverse employment action. In other words, the underlying facts provide a strong connection between this

lawsuit (Zamora's protected activity) and the suspension against him. Furthermore, in 2010, this case was being actively litigated, with discovery that included multiple depositions of HPD personnel. The dispute between the parties was a raw wound, as evidenced by Manuel Zamora's 2010 IAD complaint, which may well have further aggravated the tension among Plaintiff and other HPD officers. Given this backdrop, the absence of direct evidence showing influence is not fatal to Zamora's *prima facie* case.[32]

Moreover, Zamora has argued and presented evidence that the charges against him were thin; they were based on four minor discrepancies (or differences of opinion) between Zamora's statements and the recollections of others.[33] For example, McClelland disciplined Zamora for his statement that he "had no notice" as to what would be discussed at the meeting with his superiors on March 7, 2008, based on the

---

[32]   The City correctly points out that many statements were part of the IAD record, and not merely those of Myskowski, Casko, and Graham. However, the fact that others were interviewed is insufficient to demonstrate the absence of a genuine factual issue, because an independent investigation alone does not break the chain of connection. *See Staub*, 113 S. Ct. at 1193. In addition, the burden to establish the "causal link" element of a *prima facie* case is much less onerous than the standard for proving "but-for" causation required for the determination of the ultimate issue of retaliation. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998); *see Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).

[33]   *See* McClelland Memorandum (listing reasons for discipline); Response, at 13-17.

fact that Zamora appeared at the meeting with three binders of materials.[34]  The independent Hearing Examiner noted Zamora's explanation that, when he was summoned to the meeting, he made his "best guess" as to the meeting's agenda, and that his father helped him compile the materials in the binders.  She further found "nothing" in the evidence showing that Zamora was untruthful when he stated he had not been given notice of the meeting's purpose.[35]  In fact, the Hearing Examiner, after detailed analysis, found that the untruthfulness citation against Zamora entirely unsupported, and overturned it.  The patent weakness of all charges against Zamora provide further circumstantial evidence of a causal connection.

Finally, Zamora has presented evidence that the discipline against him was aggressive and damaging to his career.  As Zamora points out, the City's investigation of the IAD complaint filed by Zamora's father not only cleared Myskowski, Casko, and Graham of wrongdoing, but also resulted in fresh discipline against Zamora.[36]  Plaintiff's expert, Melvin Tucker, stated in deposition that untruthfulness is "usually a zero-tolerance offense in the law enforcement community, and it is most severe

---

[34]   McClelland Memorandum, at 2.

[35]   Award, at 7.

[36]   *See* Deposition of Melvin Tucker (Exhibit B to Surreply), at 32 ("internal affairs organizations in police agencies tended to investigate cases to find a way to clear the officer as opposed to investigating to determine the truth of a matter").

thing that you can have alleged against you."[37]  This evidence further supports a causal connection.

The Court therefore finds a genuine issue of material fact as to whether the protected activity in this case, which includes the filing of the instant lawsuit, was a proximate cause of Zamora's 2010 suspension for untruthfulness.

## B.    Denial of Transfer to Narcotics Division

In the Fall of 2010, Zamora applied for a position as an investigator in HPD's Narcotics Division.  The City states that Zamora was one of 43 officers who applied, and one of 36 who was eligible for an interview.  Twelve officers, including Zamora, were placed on the "most ready" list because they scored 85 or higher during the interview process.[38]   This "most ready" list expired in November 2011.  In July and August 2011, three officers (Williams, Nash, and Ferrer) were selected from the "most ready" list for assignment to the Narcotics division.[39]   Zamora did not receive the transfer and claims the denial was retaliatory.

As above, the City concedes the first two *prima facie* elements but argues that Zamora has no evidence of a causal connection between the protected activity, *i.e.*,

---

[37]    Tucker Deposition (Exhibit C to Surreply), at 112.

[38]    *See* Exhibits 15 and 16 to Motion.

[39]    Affidavit of Lt. Jose Inocencio (Exhibit 19 to Motion), at 1.

this lawsuit filed in 2007, and the denied 2010 transfer, because he has no evidence that the decision-makers on the transfer were retaliating for his protected activity. In particular, the City identifies multiple individuals involved in the selection process,[40] and states that Zamora has not alleged retaliation by any of those individuals, nor that these individuals were aware of Zamora's protected activity.

The City provides a carefully phrased affidavit from Lieutenant Inocencio, who was Commander of the Narcotics Division, to which Zamora sought to transfer. Inocencio stated that "As far as I know, Officer Zamora was never taken off of the Most Ready list."[41] This affidavit, however, does not establish that Zamora was in fact eligible for the transfer, nor that the HPD officials who participated in the personnel selections actually considered Zamora for the transfer.

Zamora points out that on November 15, 2010, seven days after he was notified that he had been placed on the "most ready" list for the transfer,[42] he received notice of his ten-day suspension. Under HPD policy, because of the suspension, he was immediately ineligible for the applied-for transfer, and any other transfer, for a period

---

[40]    Motion, at 8; Exhibit 15 to Motion, at 2.

[41]    Affidavit of J. Inocencio (Exhibit 19 to Motion), at 2.

[42]    Memorandum from R. A. Gerstner, dated Nov. 8, 2010 (Exhibit 11 to Response) (notifying Zamora that he had been placed on "most ready" list).

of seven years from the date of discipline, *i.e.*, until 2017.[43]   Zamora thus has presented competent summary judgment evidence that, even assuming he remained on the "most ready" list, he effectively was removed from consideration for the transfer to Narcotics starting on November 15, 2010.  Furthermore, Zamora points to evidence that, as of June 4, 2012, the citation for untruthfulness remains in his departmental file, despite having been overturned by the independent Hearing Examiner, and therefore it appears that he continues to be ineligible for transfer until November 15, 2017.[44]

The facts regarding Zamora's unsuccessful transfer application are intricately linked with the facts regarding the charge for untruthfulness brought against Zamora,

---

[43]   HPD General Order 300-02 (Exhibit 8 to Response), at 3 (officers with a sustained untruthfulness complaint are ineligible for transfer to Investigative Operations or certain other divisions for a period of seven years from the date of discipline for Category D or E violations).   Zamora states that his violation was Category D. Response, at 18.  The memorandum informing Zamora that he had been placed on the "most ready" list states, "However, if you have a pending internal affairs investigation that may disqualify you from transferring to the Narcotics Division, then your suitability for an investigative position will be based on the outcome of the investigation."  Exhibit 11 to Response.

[44]   Affidavit of Officer C. M. Zamora [Doc. # 207], at 2 ("the November 15, 2010 10-day temporary suspension correspondence was still contained in my file on week beginning Monday June 4, 2012.  I believe that the Defendants are punitively punishing me for this lawsuit").  Zamora further states that HPD's Internal Affairs Training Manual requires that a disciplinary action against an officer be expunged from the personnel file if the disciplinary action is overturned by an independent Hearing Examiner.  Response, at 20 (citing HPD Internal Affairs Training Manual (Exhibit 9 to Response)).

regarding which the Court already has found a genuine fact issue precluding summary judgment.  As held above, Zamora has presented evidence demonstrating a genuine fact issue as to a causal connection between the protected activity  in this case and his ten-day suspension.  Zamora also has presented summary judgment evidence that the citation for untruthfulness, which he argues was bogus and retaliatory, caused the denial of his requested transfer to Narcotics.  Therefore, at this stage of the litigation, Defendant has not demonstrated the absence of a genuine issue of material fact as to whether there was a causal connection between the protected activity in this case and Zamora's denied transfer.

## C.     Twenty-Six Month Gap

The City argues that Zamora cannot establish causation because more than 26 months elapsed between September 2008, when Christopher Zamora joined this lawsuit, and the alleged adverse employment actions in November 2010.[45]  However, the amount of elapsed time, without more, is not conclusive on the *prima facie* element of causation.  In *Gee v. Prinicipi*, the Fifth Circuit held that, although nearly two years had elapsed between the plaintiff's harassment complaint and the alleged adverse employment action, "this time lapse alone does not entitle the [defendant] to

---

[45]     Motion, at 9 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001); *Harper v. City of Jackson Muni. Sch. Dist.*, 149 F. App'x 295, 303 (5th Cir. 2005)).

summary judgment."[46]   The Court further stated, "We consider time as part of our analysis, but not in itself conclusive of our determinations of retaliation."[47]   In this case, as in *Gee*, Zamora alleges that he was subject to a series of adverse employment actions spanning several years.   Summary judgment is denied on this ground.

### D.   The City's Proffered Legitimate Non-Retaliatory Reason

The City argues in the alternative that, if summary judgment is not warranted on the *prima facie* elements, the City nevertheless has provided a legitimate business reason for the two challenged employment actions:  First, the City states that the ten-day suspension was justified because Zamora was untruthful.  Second, the City states that the denied transfer was justified because, although Zamora was on the most ready list, only three positions were open and three other applicants were chosen based on their performance levels.  Once the City provides a non-retaliatory reason for its actions, the burden shifts back to the plaintiff to demonstrate that the protected activity was a "but for" cause of the adverse employment action.[48]

---

[46]      *Gee*, 289 F.3d at 342, 347 n.3.

[47]      *Id.*  (internal citation and quotation marks omitted).

[48]      *Hernandez*, 670 F.3d at 657.

Zamora has demonstrated a "conflict in substantial evidence" on these ultimate issues of causation.[49]  Regarding Zamora's ten-day suspension, there exists a conflict in the substantial evidence concerning the actual motivation for the untruthfulness citation, given the tenuousness of the grounds given for the citation and the ruling by the independent Hearing Examiner overturning that discipline against Zamora, among other factors.  As for the transfer to the Narcotics Division, Zamora has presented evidence that the vacated citation for untruthfulness disqualified him from consideration for the position he sought.

Moreover, as Zamora points out, his claim of retaliation is strengthened by the fact that IAD officials took the apparently unusual step of citing Christopher Zamora for untruthfulness and recommending disciplinary action against him, rather than merely finding that his statement failed to provide support for Manuel Zamora's IAD complaint.  Plaintiff Zamora has demonstrated a substantial conflict in the evidence and summary judgment is denied.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

---

[49]     *Id*. at 658 ("Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.") (internal citations and quotation marks omitted).

**ORDERED**  that Defendant's Motion for Partial Summary Judgment [Doc.
# 202] is **DENIED**.  It is further

**ORDERED**  that Defendant's Motion to Strike Plaintiff's Surreply [Doc.
# 210] is **DENIED**.

SIGNED at Houston, Texas, this **13<u>th</u>** day of **September, 2012**.

_____

Nancy F. Atlas
United States District Judge