United States District Court
Southern District of Texas
**ENTERED**
November 22, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER M. ZAMORA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-4510 |
| | § | |
| CITY OF HOUSTON | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER
## REMITTING FUTURE COMPENSATORY DAMAGES

On September 6, 2013, the jury in this case reached a verdict that, *inter alia*, awarded Plaintiff Christopher Zamora $127,000 in future compensatory damages and $23,000 in past compensatory damages. *See* Verdict [Doc. # 364]. On January 30, 2014, the Court partially granted the City's motion for judgment as a matter of law and vacated the $127,000 future damages award. Memorandum and Order [Doc. # 386] ("JMOL"), at 23-28. On August 19, 2015, the Fifth Circuit reversed this ruling, holding that Zamora had presented sufficient evidence of some future reputational harm. The appellate court remanded the case and instructed this Court to "consider" remittitur "to determine the amount of damages to which Zamora is entitled for reputational harm only." Fifth Circuit Opinion [Doc. # 419], at 16.

Defendant City of Houston has filed a Motion for Remittitur [Doc. # 433] ("Motion"), and the parties have briefed the issues thoroughly. *See* Remittitur

Response [Doc. # 434]; Remittitur Reply [Doc. # 435]; Remittitur Surreply [Doc. # 436]. The Motion is ripe for decision. The Court again has carefully considered the 2013 trial record, the parties' briefing, the applicable law, and all other pertinent matters of record. The Court, despite concern that proof of non-pecuniary damages for future reputational harm as of the date of the jury verdict (September 6, 2013) is speculative and unfounded, finds that **$63,500**, one-half of the jury's future compensatory damages award, will fully compensate Plaintiff for his future reputational harm.

### I.     LEGAL STANDARD

"A district court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." *Perez v. Stephens*, 784 F.3d 276, 280 (5th Cir.), *cert. denied*, 136 S. Ct. 502 (2015) (internal citations and quotation marks omitted). *See Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007); *Henderson v. Stalder*, 407 F.3d 351, 354 (5th Cir. 2005); *Daly v. Sprague*, 742 F.2d 896, 900 (5th Cir. 1984).

Recovery of more than nominal damages for non-pecuniary harm, such as emotional distress, requires specific evidence of the nature, extent and severity of the harm. *Miller v. Raytheon Co.*, 716 F.3d 138, 147 (5th Cir. 2013); *Hitt v. Connell*, 301 F.3d 240, 250 (5th Cir. 2002); *Flowers v. S. Regional Physician Servs. Inc.*, 247 F.3d 229, 238-39 (5th Cir. 2001). "Compensatory damages for emotional harm, including

mental anguish, will not be presumed simply because the complaining party is a victim of discrimination." *Miller*, 716 F.3d at 147. An award of damages for reputational harm requires specific evidence that the reputational harm resulted from the action for which the defendant is liable. *College Network, Inc. v. Moore Educ. Publishers, Inc.*, 378 F. App'x 403, at *6-*7 (5th Cir. May 12, 2010) (defamation claim). Of course, when damages are awarded for *future* non-pecuniary harm, the showing of damage must be linked to harm the plaintiff will suffer ***in the future***. *See Thomas v. Tex. Dep't of Crim. Justice*, 297 F.3d 361, 371 (5th Cir. 2002) (remitting damages for future emotional distress in failure-to-promote case because the plaintiff's emotional difficulties had substantially lessened and because plaintiff "did not provide evidence tightly linking the denial of a promotion and future emotional harm"); *Lewallen v. City of Beaumont*, 394 F. App'x 38, 46 (5th Cir. 2010) (vacating future compensatory damages in failure-to-promote case because plaintiff did not adduce evidence sufficient to demonstrate the likelihood of "mental anguish in the future as a result of the constitutional violation that she experienced in the past").

## II.  **DISCUSSION**

The Court incorporates by reference the extensive factual recitations about the trial record set forth in its JMOL ruling [Doc. # 386] and does not repeat those details here.

Plaintiff argued at trial that the City was liable for retaliation that occurred in

2008, when he was denied a transfer to the Crime Reduction Unit ("CRU"), *and* in 2010, when he was issued a ten-day suspension that subsequently was overturned. The jury found no liability based on the 2008 events. Therefore, no damages are available to Plaintiff for the 2008 events. The jury found for Plaintiff regarding retaliation relating to the 2010 suspension. All recoverable future compensatory damages must flow from that suspension and related events. The Court proceeds, as it must in light of the explicit remand instructions, to address the amount of damages recoverable for future reputational harm resulting from the 2010 suspension.

The City's Motion for Remittitur urges that, because Plaintiff has not presented sufficiently specific evidence of future reputational harm flowing from the suspension, he should receive only nominal damages. The City's briefing relies on evidence and legal propositions cited in this Court's prior opinion. *See* JMOL, at 23-28.

In response, Plaintiff argues that "little or nothing" of the jury's $127,000 future damage award should be remitted. At trial, Plaintiff sought future damages based on two categories of harm: emotional distress and reputational harm. On appeal in the Fifth Circuit, Plaintiff abandoned his claim for damages relating to future emotional distress. Fifth Circuit Opinion, at 14. Plaintiff now contends that because there was "minimal" evidence of future emotional distress at trial, and because the verdict form did not require the jury to specify an amount attributable specifically to reputational harm, this Court should hold that all or most of the jury's award pertained to future

reputational harm.[1]

In fact, Plaintiff presented and the jury was entitled to consider evidence of non-pecuniary damage attributable to mental anguish. For instance, Plaintiff testified on re-cross examination that he continued to have occasional migraine headaches for which he took medication.[2]

As for Plaintiff's evidence of reputational harm, Plaintiff first points to the

---

[1] The form of Verdict submitted to the jury, which adopted Plaintiff's requested categories, did not specifically list reputational harm as a possible basis for damages. The jurors were asked:

> What sum of money if any paid now in cash, do you find would fairly and reasonably compensate Plaintiff Chris Zamora for his actual damages, if any, suffered as a result of Defendant City of Houston's actions that you have found would not have occurred but for retaliation?
>
> Emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-monetary losses:
>
> (A)  In the past:
>        Answer in dollars and cents:  $_____
> (B)  In the future:
>        Answer in dollars and cents:  $_____

Verdict [Doc. # 364], at 2. The Court instructed jury the orally and in writing that: "If Plaintiff Chris Zamora wins, he is entitled to compensatory damages for any ***emotional pain***, suffering, inconvenience, ***mental anguish***, loss of enjoyment of life, and other non-monetary losses you find he suffered because of wrongful conduct, such as injury to his professional standing or ***reputation***." Court's Instructions to the Jury [Doc. # 359], at 9-10 (emphasis added).

[2] *See* Trial Transcript [Doc. # 404], at 46 (Plaintiff testified that he started taking migraine medication right after his 2008 transfer out of CRU and that he "occasionally" had migraines at the time of trial).

testimony from Executive Assistant Chief ("EAC") Michael Dirden and EAC Kirk Munden, each of whom stated he continued to believe that Plaintiff was untruthful, despite the fact that the untruthfulness finding against him had been overturned by an independent hearing examiner. Response, at 4-5 (citing trial testimony). The JMOL carefully examined this evidence. *See* JMOL, at 24-28; *see id.* at 26 n.30 (discussing the opinions of EACs Dirden and Munden). EAC Dirden testified that, because the examiner had overturned the untruthfulness finding, he was required to follow the examiner's ruling. Trial Testimony [Doc. # 407], at 270-71. Zamora has not pointed to any specific evidence of post-suspension consequences flowing from the EACs' private opinions regarding the examiner's ruling or their personal views of Plaintiff's truthfulness regarding the incidents in issue giving rise to the untruthfulness finding (or otherwise).[3]

Zamora argued at trial, however, that he deserved a transfer into the Narcotics

---

[3] Dirden and Munden testified that the overturned suspension was not publicly available and could not be used against Zamora professionally in promotions or otherwise in the Houston Police Department ("HPD"). The evidence is clear that neither had given Zamora a negative job reference. *See* City's Reply, at 7-8 (citing trial testimony). Furthermore, the trial evidence showed without contradiction that Plaintiff had a good relationship with his then-current supervisors, consistently received positive reviews from his supervisors, was selected for prestigious training opportunities in the Narcotics Unit and elsewhere, received multiple commendations, and was promoted to sergeant (with an increase in salary and more responsibility) during the trial. *See* JMOL, at 24-25. There was no trial evidence of any ***future*** consequences flowing from the EACs' personal opinions regarding Plaintiff's truthfulness or the examiner's overturning the untruthfulness ruling.

Unit but was not selected for the transfer.[4] The Fifth Circuit opined that the jury "was entitled to make the natural and common-sense inference that an employee suffering from a blackened reputation in the eyes of high-ranking executives of an organization is limited in his potential to rise within that organization." Fifth Circuit Opinion, at 14.

There was also evidence before the jury that Plaintiff received various commendations and promotion after the suspension. In this regard, the Circuit stated, "That he is currently doing well within his new unit . . . does not mean that his future is not limited by the harm to his reputation." *Id*. at 15.[5]

---

[4] *See* JMOL at 25 n. 28 (discussing Plaintiff's complaint that he did not receive his requested transfer into Narcotics, but noting that Plaintiff was one of only twelve officers placed on the "most ready" list for a Narcotics transfer, that he was not removed from the list during the untruthfulness citation process, and that Plaintiff had no evidence that anyone in the Narcotics Unit knew about the citation); *id*. at 26-27 n.31 ("Although Plaintiff testified to his belief that he will in the future be denied transfers to the Narcotics Division or other proactive units because his past citations for untruthfulness will make him a less desirable witness in court, the record contains no evidence demonstrating that this belief is justified in light of Plaintiff's current rank of sergeant. The evidence at trial revealed that sergeants arrive at patrol officers' crime scenes after the fact, and review patrol officers' and others' work. There was no evidence at trial supporting Plaintiff's contention that sergeants are likely to testify in court.").

[5] As set forth in the JMOL, at 27-28, previous opinions from the Fifth Circuit have remitted or vacated awards of non-pecuniary future damages when the plaintiff did not make a sufficient showing of harm in the future. *See Thomas*, 297 F.3d at 371 (remitting award of future damages in failure-to-promote case; record contained evidence that plaintiff's employment situation had improved); *Lewallen*, 394 F. App'x at 46 (vacating award of future emotional distress in failure-to-promote case for insufficient evidence and noting that plaintiff had been promoted before trial)

Second, Zamora cites to generic expert testimony from Melvin Tucker regarding the value and importance placed on truthfulness by law enforcement agencies such as the HPD. Tucker testified that an untruthfulness charge against an officer is a "'bell . . . that can't be un-rung'" and is detrimental to an officer's career. Trial Testimony [Doc. # 404], at 94-95. *See id*. at 96 (an officer found to be untruthful was unlikely to ever regain his professional reputation but that, if one could, it would take "'a long, long, long time"). The JMOL ruling noted that Plaintiff had been promoted to sergeant upon his first application, as soon as he was eligible for the promotion. JMOL, at 25.[6] However, the Court of Appeals concluded: "The jury was entitled to consider what Tucker told them about police department culture and draw their own conclusions about the extent that Zamora's 'baggage' would continue to injure him in the future." Fifth Circuit Opinion, at 15. The appellate court therefore held that Zamora's trial evidence was legally sufficient to support compensatory damages for future reputational harm.

The City now requests an award of nominal damages, arguing the paucity of evidence supporting an award of future damages. *See Miller*, 716 F.3d at 147. The Court of Appeals did not remand the case for entry of a nominal damages award, but

---

[6] Moreover, as noted in the JMOL ruling, Defendant expunged all references in Plaintiff's personnel files to the untruthfulness citations and discipline, rendering future reputational harm to Plaintiff highly unlikely. JMOL, at 26.

rather for consideration of remittitur.[7]  This Court must comply with the superior court's directives.  *See Perez*, 784 F.3d at 280; *Henderson*, 407 F.3d at 354 ("Where . . . further proceedings in the district court are specified in the mandate of the Court of Appeals, the district court is limited to holding such as are directed") (internal citation and quotation marks omitted).  Accordingly, this Court turns to the issue of remittitur and considers what amount of damages will compensate Plaintiff for his future reputational harm.

The Court maintains its view that the trial evidence is extremely general and arguably too speculative to support future damages tied to the City's 2010 misconduct, which was administratively overturned within six months.  But, given the jury's right to make credibility assessments concerning Plaintiff's superiors' views, and to credit the generic testimony of Plaintiff's expert Tucker, the Court concludes that Plaintiff established at trial by a preponderance of the evidence that he could suffer some future compensable reputational harm flowing specifically from the 2010

---

[7] *See* Fifth Circuit Opinion, at 16 ("[A]lthough we conclude that Zamora presented sufficient evidence to support an award of *some* amount of damages for future reputational harm, the jury's award did not specify how much of the award was attributable to emotional distress and how much was attributable to reputational harm. On remand, the district court should consider remittitur to determine the amount of damages to which Zamora is entitled for reputational harm only.")

suspension.[8]

Recognizing that precision is impossible, the Court finds that one-half of the jury's $127,000 future non-monetary damages award ($63,500) was attributable to future emotional harm, namely, his anguish and continuing occasional migraine headaches for which Plaintiff was still taking medication at the time of trial. The Court thus estimates that the remaining portion of the jury's award, **$63,500**, was attributable to Plaintiff's future reputational injury.

### III.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the City's Motion for Remittitur [Doc. # 433] is **GRANTED in part**. Plaintiff is awarded **$63,500** in future compensatory damages.

---

[8]   The Court does not consider the reputational effects of the 2008 transfer. Plaintiff testified at trial that most if not all of his future reputational harm was linked to his 2008 transfer out of the Crime Reduction Unit ("CRU"), which transfer the jury unanimously found was *not* retaliatory. *See* Trial Testimony [Doc. # 403], at 55-56 (Plaintiff feared that 2008 events would label him as a problem employee and prevent him from competing for future positions), 62-63 (fellow officers in 2008 unit no longer wanted to associate themselves with Plaintiff), 67 (2008 events cased negative feelings regarding his reputation within his unit); 100-01 (2008 transfer affected Plaintiff's ability to network and access equipment and "marred and ruined" his professional reputation); Trial Testimony [Doc. # 404], at 31 (2008 transfer caused damaged to his reputation and was permanently on his file), 34-35 (after 2008 transfer Plaintiff was depressed, his demeanor and attitude changed, and he had severe migraine headaches).

SIGNED at Houston, Texas, this **22nd** day of **November, 2016.**

*[signature]*

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE